05-2868-ag
Perriello v. Napolitano

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: June 2, 2009          Decided: September 1, 2009)

Docket No. 05-2868-ag

- - - - - - - - - - - - - - - - - - - - - - -x

SAVARIO PERRIELLO,

        Petitioner,

        -v.-                                    05-2868-ag

JANET NAPOLITANO; JOHN T. MORTON, Asst.
Secretary, United States Immigration and
Customs Enforcement; CHRISTOPHER SHANAHAN,
Field Office Director of New York City,
U.S. Immigration and Customs Enforcement,
Department of Homeland Security; UNITED
STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,[*]

        Respondents.

- - - - - - - - - - - - - - - - - - - - - - -x

---

[*] Pursuant to Federal Rule of Appellate Procedure
43(c)(2), Secretary Janet Napolitano of the Department of
Homeland Security is automatically substituted for former
Secretary Tom Ridge; Assistant Secretary John T. Morton of
the Department of Homeland Security is automatically
substituted for former Assistant Secretary Michael J.
Garcia; and Field Office Director Christopher Shanahan is
automatically substituted for former Field Office Director
John P. Carbone as respondents in this case.

Before:   JACOBS, Chief Judge, KEARSE and SACK,
          Circuit Judges.

Petitioner Savario Perriello seeks review of a December 17, 2004 decision of the Board of Immigration Appeals finding him ineligible for relief from removal.  Perriello argues for termination of his removal proceedings pursuant to 8 C.F.R. § 1239.2(f) and a waiver of inadmissibility pursuant to former Immigration and Nationality Act § 212(c).  The petition is denied.

MATTHEW L. GUADAGNO (Ruchi Thaker, Jules E. Coven, Kerry W. Bretz on the brief), Bretz & Coven LLP, New York, New York, for Petitioner.

NATASHA OELTJEN, Assistant United States Attorney (Sarah S. Normand, Assistant United States Attorney on the brief) for Lev L. Dassin, Acting United States Attorney for the Southern District of New York, New York, New York, for Respondents.

DENNIS JACOBS, Chief Judge:

Petitioner Savario Perriello, a native and citizen of Italy and a lawful permanent resident of the United States, seeks review of a December 17, 2004 order of the Board of Immigration Appeals ("BIA") affirming the August 30, 2002 decision of Immigration Judge ("IJ") Robert D. Weisel

2

finding Perriello inadmissible and ordering him removed to Italy. In re Savario Perriello, No. A 12 363 855 (B.I.A. Dec. 17, 2004), aff'g No. A 12 363 855 (Immig. Ct. N.Y. City Aug. 30, 2002). Perriello argues for termination of his removal proceedings pursuant to 8 C.F.R. § 1239.2(f)[1] and a waiver of inadmissibility pursuant to former Immigration and Nationality Act ("INA") § 212(c).

We acknowledge the significant hardship that Perriello and his family will face as a result of the unaccountable delay in the decision to seek his removal decades after his conviction, and notwithstanding his evidently lawful and productive life in the interval. Nonetheless, we conclude that [i] Perriello is not entitled to relief under § 1239.2(f) (which has been rendered vestigial by revisions to the INA), because he has not established prima facie eligibility for naturalization, and [ii] that he is barred from relief under INA § 212(c) by virtue of § 511(a) of the Immigration Act of 1990 ("IMMACT"), Pub. L. No. 101-649, § 511(a), 104 Stat. 4978, 5052. Accordingly, the petition is denied.

---

[1] Unless otherwise noted, all citations to statutes and regulations refer to the current versions as of the filing of this opinion.

3

**I**

Perriello first entered the United States on December 27, 1961, when he was thirteen years old. On December 28, 1977, Perriello was convicted by a jury of Arson in the Second Degree in violation of New York Penal Law § 150.15 and eight counts of Criminal Mischief in the Second Degree in violation of New York Penal Law § 145.10. Perriello was sentenced to a term of seven to twenty-five years in prison, and he served seven years before his release on parole in 1984.

After his release from prison, Perriello started a business and contributed to his community. Perriello married a United States citizen in 1991, and he has four United States citizen children. Perriello and his wife operate a restaurant in Haverstraw, New York.

On November 28, 2000, Perriello was detained at Newark Airport on his return from a brief trip to Italy. The Immigration and Naturalization Service ("INS"),[2] having discovered Perriello's 1977 conviction, paroled him into the

---

[2] Effective March 1, 2003, the INS ceased to exist. The Department of Homeland Security has assumed responsibility for the immigration functions formerly performed by INS. See Ali v. Mukasey, 529 F.3d 478, 482 n.4 (2d Cir. 2008).

country pending a determination of his admissibility.  On February 13, 2001, the INS issued a Notice to Appear and placed Perriello in removal proceedings based on his 1977 conviction for a crime involving moral turpitude.

Perriello admitted the allegations contained in the Notice to Appear, but sought to avoid removal by filing an application for naturalization and moving for termination of his removal proceedings pursuant to 8 C.F.R. § 1239.2(f), which permits an IJ to terminate removal proceedings while an application for naturalization is pending.  The IJ declined to terminate the removal proceedings and ordered Perriello removed on August 30, 2002.  The BIA affirmed on December 17, 2004.

On February 22, 2005, Perriello challenged the BIA's decision in a habeas corpus petition filed in the Southern District of New York.  While the petition was pending, Congress enacted section 106(a)(1) of the Real ID Act of 2005 ("Real ID Act"), Pub. L. No. 109-13, Div. B, § 106(a)(1)(B), 119 Stat. 231, 310, which provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal."  The district court

transferred Perriello's habeas petition to this Court pursuant to Real ID Act § 106(c), which requires that any habeas petition [i] challenging an order of removal, and [ii] pending in district court on the date of the Act's enactment, be transferred to the appropriate court of appeals.

## II

By virtue of 8 C.F.R. § 1239.2(f),[3] an IJ may terminate removal proceedings to permit an alien who has established prima facie eligibility for naturalization to proceed to a "final hearing" on a pending naturalization application. The BIA has held, however, that an IJ may not terminate

---

[3] The current text of the regulation is:

> An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors; in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

8 U.S.C. § 1239.2(f).

6

removal proceedings unless the alien has obtained an affirmative communication from the Department of Homeland Security ("DHS") stating that the alien is prima facie eligible for naturalization. See In re Hidalgo, 24 I. & N. Dec. 103, 106 (B.I.A. 2007). But nothing seems to compel DHS to make such a determination, let alone to issue such a communication. Moreover, in many cases (including this one), DHS is prohibited by statute from considering a naturalization application (a prerequisite to determining prima facie eligibility) while removal proceedings are pending. The law, in effect, seems to be chasing its tail.

We review de novo Perriello's claim that the IJ and BIA erred as a matter of law in denying relief from removal. See, e.g., Ibragimov v. Gonzales, 476 F.3d 125, 132 (2d Cir. 2007). But we owe deference to the BIA's interpretation of its own regulations, and the BIA's interpretation will be "controlling unless plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal quotation marks omitted); see also Bah v. Mukasey, 529 F.3d 99, 110-11 (2d Cir. 2008).

In order to analyze Perriello's arguments and to appreciate the anomaly that complicates the analysis, it is

7

necessary to describe the evolution of the statutes and regulations relevant to this appeal.

**A.   Naturalization and Removal Law Before 1990**

From 1906 until 1990, an application for naturalization was reviewed in two stages.  See Etape v. Chertoff, 497 F.3d 379, 385 (4th Cir. 2007); Admin. Naturalization, 56 Fed. Reg. 50475, 50476 (Oct. 7, 1991).  First, the Attorney General considered the application and made a recommendation to the naturalization court as to the alien's prima facie eligibility for naturalization.  See 8 U.S.C. § 1446(a)-(d) (1988).  The second stage was a "final hearing" held "in open court before a judge or judges."  8 U.S.C. § 1447(a) (1988).  Under this system, courts were vested with "[e]xclusive jurisdiction to naturalize persons as citizens of the United States."[4]  8 U.S.C. § 1421(a) (1988).

Until 1990, "naturalization authority and removal authority were vested in different branches of government, with naturalization being the province of the courts and

---

[4]  Courts with authority to naturalize aliens included United States district courts and "also all courts of record in any State or Territory . . . having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited."  8 U.S.C. § 1421(a) (1988).

removal the province of the executive acting through the Attorney General." Ajlani v. Chertoff, 545 F.3d 229, 235 (2d Cir. 2008). Prior to 1950, this led to "both the deportation and naturalization processes . . . proceed[ing] along together until either petitioner's deportation or naturalization ipso facto terminated the possibility of the other occurring." Shomberg v. United States, 348 U.S. 540, 543 (1955).

In 1950, Congress put an end to this "race between the alien to gain citizenship and the Attorney General to deport him," id. at 544, by enacting section 27 of the Internal Security Act of 1950, Pub. L. No. 81-831, § 27, 64 Stat. 987, 1015, reenacted without significant change by Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 318, 66 Stat. 163, 244 (codified as amended at 8 U.S.C. § 1429). That statute "afforded [priority to] removal proceedings," Ajlani, 545 F.3d at 239, and "prohibited naturalization or the holding of final hearings on naturalization petitions where deportation proceedings were instituted," Shomberg, 540 U.S. at 544. As a result, aliens who had successfully navigated the first stage of the naturalization process, and were thus prima facie eligible

9

for naturalization, were in limbo because courts were prohibited from conducting final hearings on their applications. To provide such aliens access to court, the BIA held, in Matter of B-, 6 I. & N. Dec. 713, 720 (B.I.A. 1955), that "there exists inherent authority in the Attorney General to terminate deportation proceedings for the limited purpose of permitting the alien to file a petition for naturalization and to be heard thereon by a naturalization court."

In 1974, the BIA's decision in Matter of B- was adopted in the regulation now found at § 1239.2(f). The regulation provided, in relevant part:

> A[n immigration judge] may, in his discretion, terminate deportation proceedings to permit respondent to proceed to a final hearing on a pending application or petition for naturalization when the respondent has established prima facie eligibility for naturalization and the case involves exceptionally appealing or humanitarian factors; in every other case, the deportation hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any stage of the proceedings.

8 CFR § 242.7 (1974).

Soon after, in Matter of Cruz, 15 I. & N. Dec. 236

(B.I.A. 1975), the BIA considered the regulation's requirement that an alien "ha[ve] established prima facie eligibility for naturalization." Id. at 236-38. The BIA held that "neither [it] nor immigration judges have authority with respect to the naturalization of aliens," and concluded therefore that the alien must establish "prima facie eligibility" by adducing "an affirmative communication from the [INS] or . . . a declaration of a court that the alien would be eligible for naturalization but for the pendency of the deportation proceedings or the existence of an outstanding order of deportation." Id. at 237.

B.  **Naturalization and Removal Law After 1990**

With the passage of IMMACT in 1990, Congress substantially reformed the naturalization process. Two features of that reform are relevant to this case. First, IMMACT eliminated "final hearing[s] . . . in open court," IMMACT § 407(d)(14), 104 Stat. at 5044, and established that "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General," id. § 401(a), 104 Stat. at 5038 (codified at 8 U.S.C.

11

§ 1421(a)).[5]  To implement this shift in authority, IMMACT streamlined the naturalization process and provided for comprehensive review of applications by immigration officers empowered to grant or deny naturalization.  Id. § 407(d)(13)(E), 104 Stat. at 5043 (codified at 8 U.S.C. § 1446(d)); see also Etape, 497 F.3d at 385-86.

Second, IMMACT froze the processing of naturalization applications while removal proceedings are pending.  Before IMMACT, the Attorney General had an unrestricted ability to review naturalization applications notwithstanding the pendency of removal proceedings: only courts were prohibited from conducting "final hearings."  IMMACT, however, amended § 1429 to provide that "no person shall be naturalized against whom there is outstanding a final finding of deportability . . . and no application for naturalization shall be considered by the Attorney General if there is

---

[5] IMMACT preserved a role for federal courts in the naturalization process: "after exhausting administrative remedies, [an alien] may petition for de novo review in the district court."  See Etape, 497 F.3d at 386 (citing 8 U.S.C. § 1421(c)).  An alien may also seek relief in district court if DHS fails to act on a naturalization application within 120 days of an alien's examination by an immigration officer.  See 8 U.S.C. § 1447(b).  Additionally, naturalization courts continue to administer the oath of allegiance to new citizens.  See 8 U.S.C. § 1421(b).

12

pending against the applicant a [removal] proceeding." IMMACT § 407(d)(3), 104 Stat. at 5041 (codified as amended at 8 U.S.C. § 1429 (Supp. II 1990)) (emphasis added).

**C. The Application of § 1239.2(f) After IMMACT**

After IMMACT, courts considered the continued viability of § 1239.2(f), as interpreted by the BIA in Cruz. Several circuit courts of appeal questioned whether the BIA could continue to rely on courts to issue declarations as to prima facie eligibility for naturalization in light of the language in § 1421(a) granting the Attorney General exclusive jurisdiction over naturalization applications. See, e.g., Saba-Bakare v. Chertoff, 507 F.3d 337, 341 (5th Cir. 2007); De Lara Bellajaro v. Schiltgen, 378 F.3d 1042, 1047 (9th Cir. 2004); Zayed v. United States, 368 F.3d 902, 907 & n.6 (6th Cir. 2004). And at least one circuit questioned whether the Attorney General could consider naturalization applications for the limited, administrative purpose of terminating removal proceedings in light of the bar in § 1429. Apokarina v. Ashcroft, 93 Fed. App'x 469, 470, 472 (3d Cir. 2004).

In 2007, the BIA reconsidered Cruz and overruled the decision insofar as it contemplated that aliens would obtain

13

declarations from courts as to prima facie eligibility for naturalization. Hidalgo, 24 I. & N. Dec. at 105. The BIA concluded that courts no longer had jurisdiction to provide such declarations, in light of § 1421. Id.

Nonetheless, the BIA reaffirmed its instruction that "the Board and . . . Immigration Judges . . . require some form of affirmative communication from the DHS prior to terminating proceedings based on [an alien's] pending naturalization application." Id. at 106. In doing so, the BIA did not take into account IMMACT's revisions to § 1429, which limited administrative review of naturalization applications while removal proceedings are pending. Likewise, the Attorney General (and DHS) failed to conform the antiquated language in § 1239.2(f), which has caused inconsistency.[6] In some cases (such as this one), DHS has

---

[6] In 1997, INS made technical changes to the language of the regulation after passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, Div. C, 110 Stat. 3009, 3009-546 et seq. Specifically, INS replaced the word "deportation" with the word "removal" in two places. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10367 (March 6, 1997). Although the agency revised the regulation to reflect changes in IIRIRA, it never revised the regulation in response to IMMACT, and the regulation remains inconsistent with that statute.

14

adjudicated naturalization applications while aliens have awaited termination of their removal proceedings, notwithstanding the bar in § 1429. See, e.g., Saba-Bakare, 507 F.3d at 339; Hidalgo, 24 I. & N. Dec. at 106-07. In other cases, IJs have determined prima facie eligibility for naturalization, notwithstanding the BIA's holding in Cruz that they lack jurisdiction to do so. See, e.g., Nolan v. Holmes, 334 F.3d 189, 191-92 (2d Cir. 2003); Fretas v. Hansen, No. 1:06CV1475, 2008 WL 4404276, at *1 (N.D. Ohio Sep. 23, 2008). And in yet other cases, no determination of prima facie eligibility has been made by anybody, leaving aliens to pursue writs of mandamus in an effort to compel DHS to produce "affirmative statement[s]" as to prima facie eligibility. See, e.g., Sandoval-Valenzuela v. Gonzalez, No. C 08-2361 RS, 2008 WL 3916030, at *1-2 (N.D. Cal. Aug. 25, 2008); Escobar-Garfias v. Gonzales, No. 06-CV-103-BR, 2007 WL 281657, at *2 (D. Or. Jan. 26, 2007); Fuks v. Devine, No. 05 C 5666, 2006 WL 2051321, at *2-4 (N.D. Ill. July 20, 2006).

One of these cases is edifying, at least to illustrate the prevailing muddle. A writ of mandamus was sought "to the Attorney General, ordering him to perform his legal duty

and prevent different parts of the Department of Justice from adopting conflicting view[s] of Cruz." Fretas, 2008 WL 4404276, at *2. The alien sought this relief after DHS concluded that it lacked jurisdiction over Fretas' application because of § 1429, but nonetheless advised that Fretas was not prima facie eligible for naturalization. Id. An IJ had previously ruled that Fretas was prima facie eligible for naturalization, but the BIA reversed, holding that Cruz prohibited the IJ from making that determination. Id. at *1.

**D. Perriello's Motion to Terminate Removal Proceedings**

In this case, the IJ denied Perriello's motion to terminate the removal proceedings on the ground that he had not obtained an "affirmative communication from [INS] regarding [his] naturalization eligibility." But the agency could not provide an "affirmative communication," because § 1429 prohibited it from considering Perriello's naturalization application while removal proceedings were pending.

The effect of IMMACT is that aliens can no longer do what Perriello did in this case: apply for naturalization after removal proceedings have commenced and then move for

termination of the removal proceedings.[7] Once removal proceedings are in progress, DHS is barred by IMMACT from considering an alien's application; so it will be impossible for an alien to establish prima facie eligibility for naturalization.[8]

Perriello argues that it is unnecessary for him to obtain a statement from DHS, because IJs and the BIA may make prima facie determinations as to eligibility for naturalization. Perriello is mistaken for two reasons.

First, the BIA determined in Hidalgo that it and IJs lack jurisdiction to make prima facie determinations of eligibility for naturalization. The BIA's conclusion is consistent with § 1421(a), which states that "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." We owe

---

[7] In Nolan, 334 F.3d at 193-204, we considered the petitioner's prima facie eligibility for naturalization. In Nolan, neither party raised the question whether IMMACT limited our review, and the question therefore was not considered, let alone decided. Moreover, Nolan involved an application for naturalization under INA § 329, which exempts veterans who have served during periods of military hostilities from the bar in § 1429. See 8 U.S.C. § 1440(b)(1).

[8] We need not decide on this appeal whether, and in what circumstances, an alien could benefit from § 1239.2(f) if she has a naturalization application pending at the time removal proceedings commence.

17

deference to the BIA's conclusions about the scope of its jurisdiction under the immigration laws, and the BIA's holding is neither "plainly erroneous [n]or inconsistent with the regulation." Auer, 519 U.S. at 461 (internal quotation marks omitted).

Second, the plain language of § 1429 prohibits the Attorney General from considering naturalization applications while removal proceedings are pending, and we have held that "district court authority [under 8 U.S.C. § 1447(b)] to grant naturalization relief while removal proceedings are pending cannot be greater than that of the Attorney General," Ajlani, 545 F.3d at 240. It would be odd if the Attorney General and district courts were barred from considering naturalization applications while removal proceedings are pending, yet the BIA and IJs--who have no jurisdiction over such applications in any case--were not.

Perriello also argues that this Court should not interpret the regulation in a way that restricts its benefit to aliens. But it is not a judicial role to save a regulation that now conflicts, at least in part, with the underlying statute. As reflected in federal court decisions around the country, the failure of DHS to amend § 1239.2(f)

18

has made for considerable confusion.  It is for DHS or Congress to reconcile the regulation with the INA.

For the foregoing reasons, we affirm the denial of relief under § 1239.2(f), on the ground that Perriello has not (and cannot) establish prima facie eligibility for naturalization.[9]

## III

Perriello also claims that he is eligible for a waiver of inadmissibility pursuant to former INA § 212(c).  That section provided that:

> Aliens lawfully admitted for permanent
> residence who temporarily proceeded
> abroad voluntarily and not under an order
> of deportation, and who are returning to
> a lawful unrelinquished domicile of seven
> consecutive years, may be admitted in the
> discretion of the Attorney General

---

[9] Perriello points out that DHS's denial of his naturalization application (while his appeal was pending before the BIA) was without prejudice, and argues that the willingness to leave open the prospect of future proceedings amounts to an affirmative statement that he is prima facie eligible for naturalization.  Accordingly, he contends that the BIA should have remanded his motion for termination of the removal proceedings to the IJ for further consideration. But especially considering that DHS was prohibited from ruling on Perriello's naturalization application while removal proceedings were pending, denial without prejudice does not signify a ruling on prima facie eligibility one way or another.

> without regard to the provisions [setting
> forth various grounds for exclusion].

Buitrago-Cuesta v. I.N.S., 7 F.3d 291, 292 (2d Cir. 1993) (quoting 8 U.S.C. § 1182(c)).

However, the class of aliens eligible for relief under § 212(c) was narrowed by IMMACT § 511(a), 104 Stat. at 5052, which precludes an alien who has "been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years" from relief under § 212(c). In Buitrago-Cuesta, we ruled that § 511(a) applies retroactively to aliens convicted of aggravated felonies before the statute was enacted. 7 F.3d at 295. "[T]he plain language of the statute indicates a congressional intent that § 511 apply retroactively." Id.

Perriello argues that under Restrepo v. McElroy, 369 F.3d 627 (2d Cir. 2004), his reliance on the continuing availability of § 212(c) during the period between his release from prison and the enactment of § 511(a) precludes the retroactive application of § 511(a) in his case. Restrepo held that ambiguity in the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214--which barred certain aliens, including those convicted of aggravated felonies, from obtaining § 212(c)

20

relief--precludes retroactive application of that statute to aliens who delayed proactively seeking § 212(c) relief because they believed such relief would be available in the future.  369 F.3d at 638.

Restrepo is of no help to Perriello, because we held in Buitrago-Cuesta that § 511(a) unambiguously applies retroactively.[10]  7 F.3d at 295; see also Singh v. Mukasey, 520 F.3d 119, 123 (2d Cir. 2008) (per curiam) (restating Buitrago-Cuesta's holding "that the plain language of IMMACT indicates a congressional intent that § 511 apply retroactively" (internal quotation marks and brackets omitted)); Thom v. Ashcroft, 369 F.3d 158, 163 n.7 (observing that Restrepo had no impact on Buitrago-Cuesta's holding with respect to aliens convicted after trial); Reid v. Holmes, 323 F.3d 187, 188 (2d Cir. 2003) (per curiam) (noting that Buitrago-Cuesta "clearly established that § 511(a) of the Immigration Act of 1990 could be applied retroactively to aliens whose criminal convictions pre-dated

---

[10] Restrepo itself did not involve § 511(a), presumably because "[t]he record d[id] not indicate the length of [Restrepo's] term of imprisonment."  369 F.3d at 630 n.1. Also, Restrepo was convicted in 1992 and INS initiated removal proceedings in 1996, id. at 630, which was too soon for the agency to rely on § 511(a).

21

the statute's enactment").  When a statute is unambiguous, we are bound by the clear intent of Congress.  See Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (holding that courts must defer to express congressional prescriptions in determining the retroactivity of civil statutes).  We conclude that Restrepo is inapplicable to an alien convicted of an aggravated felony at trial who is barred by § 511(a) from obtaining § 212(c) relief.[11]

For the foregoing reasons, the petition is denied.

---

[11] Because Perriello was convicted after a jury trial, we express no view as to the possible retroactivity of § 511(a) to aliens who were convicted pursuant to plea agreements.  See 8 C.F.R. § 1212.3(f)(4)(ii) ("An alien is not ineligible for section 212(c) relief on account of an aggravated felony conviction entered pursuant to a plea agreement that was made before [the enactment of § 511(a)].").