Salvatore CASTIGLIA, Plaintiff–Appellant,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Defendant–Appellee.

No. 95–17210.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1997.

Decided March 7, 1997.

Donald L. Ungar, Simmons, Ungar, Helbush, Steinberg & Bright, San Francisco, California, for plaintiff-appellant.

Norah Ascoli Schwarz, and Douglas E. Ginsburg, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for defendant-appellee.

Before: LAY,* GOODWIN, and SCHROEDER, Circuit Judges.

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## OPINION

GOODWIN, Circuit Judge:

Salvatore Castiglia appeals a summary judgment in favor of the Immigration and Naturalization Service ("INS") denying his application for naturalization as an honorably discharged war veteran claiming benefits under 8 U.S.C. § 1440. The blemish on his character was a murder conviction in 1974. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Castiglia came to the United States from Italy in 1958 at the age of eight. In 1967, he enlisted in the United States Army and served on active duty for two years during the Vietnam War. While in the army, Castiglia became addicted to narcotics; after his discharge, he was convicted of armed robbery, sale of heroin, and second degree murder. Castiglia was released from prison seven years ago. He claims that he now has turned his life around. He is involved with the community and has led in educating youth about drugs.

Castiglia applied for naturalization under § 329 of the Immigration and Naturalization Act, 8 U.S.C. § 1440. This section modifies the basic requirements for naturalization as set forth in 8 U.S.C. § 1427 by exempting war veterans from the normal residence and physical presence requirements within the United States.

The INS decided that Castiglia was ineligible for naturalization because he had been convicted of murder. The district court affirmed the denial of Castiglia's application for naturalization and he timely appealed to this court.

## I. Requirement to Prove Good Moral Character

■ A decision of this court filed while this appeal was pending precludes Castiglia's argument that war veterans need not prove good character in order to be naturalized. *Santamaria–Ames v. INS,* 104 F.3d 1127, 1130, (9th Cir. December 31, 1996) (reaffirming that war veterans are not exempt from good moral character requirement of § 1427); *see also Jung v. Barber,* 184 F.2d 491, 496 (9th Cir.1950) (requiring a war veteran to prove his good moral character at the date of filing his petition for naturalization).

*Santamaria–Ames* and this case are in some respects similar. Both Castiglia and the petitioner in *Santamaria–Ames* had satisfied the requirements of 8 U.S.C. § 1440 that they serve in the armed forces during qualifying hostilities. Each received an honorable discharge. Each applicant began to accumulate a criminal record upon his discharge. Santamaria–Ames acquired five felonies and a dozen misdemeanors convictions. Castiglia capped his criminal career with a murder. Both applicants, in so far as the records reveal, accumulated crime-free periods of time. In neither case, however, do we know how much of that crime-free time was accounted for by custodial detention. But the cases have one substantial difference. Santamaria–Ames was not convicted of murder.

In *Santamaria–Ames,* we held that the court could not rely solely upon petitioner's criminal history to deny naturalization. We remanded to the district court to give the petitioner an opportunity to prove, if he could, that during the relevant period (the time of his application) he was, and continues to be "of good moral character, attached to the principles of the Constitution of the United States and favorably disposed toward the good order and happiness of the United States." 8 C.F.R. § 329.2(d).

Castiglia argues that in his case, as in *Santamaria–Ames,* the INS and the district court relied on criminal history alone to determine that he failed to satisfy the statutory requirement of good moral character at the time of his application. Castiglia claims to be entitled to a remand, so that he too, can prove that at the time of his application he was of good moral character. But for § 1101(f), Castiglia might have a point.

## II. Effect of 8 U.S.C. § 1101(f)

Castiglia confronts a statute not raised in *Santamaria–Ames:* 8 U.S.C. § 1101(f)(8).

That section, as amended in 1994, provides: "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was ... (8) one who *at any time* has been convicted of an aggravated felony." 8 U.S.C. § 1101(f)(8) (1996) (emphasis added). The INS found that Castiglia could not prove good moral character because he had been convicted of second degree murder, an aggravated felony defined in § 1101(a)(43)(A).

■ Nonetheless, Castiglia contends that § 1101(f) does not preclude him from showing his present good moral character. Castiglia argues that the phrase "at any time" in § 1101(f) is modified by section's preceding portion to mean: "at any time during the period for which good moral character is required to be established." Because § 1440 exempts alien veterans from any residence or physical presence requirements, Castiglia argues that there is no period during which good moral character must be established. Thus, Castiglia concludes, there is no period during which his murder conviction could be a bar to a finding of good moral character; and § 1101(f) would therefore not apply to veterans who served in wartime. This argument is nonsense.

■ A plain reading of § 1101(f)(8) teaches why Castiglia is mistaken. If an alien "at any time" in his life has been convicted of an aggravated felony, then he cannot meet the good character requirement. The usual meaning of the phrase "at any time" is "at any time at all." A speaker who wishes to limit the scope of "at any time" will add a modification immediately after it, as does Castiglia in his proposed interpretation. The statute, by contrast, starts with the constrained time period "during the time period for which good moral character is required to be established." The statute uses "at any time" only later, to establish a different, unconstrained time period to apply to the condition "convicted of an aggravated felony."

A reading of § 1101(f) in its entirety also supports this interpretation. When Congress wanted to refer to specified periods of time in other sections of the code, Congress did not use "at any time," but instead wrote "during such period." So, for example, § 1101(f)(5) prohibits finding that someone who "has been convicted of two or more gambling offenses committed *during such period,*" is a person of good moral character. 8 U.S.C. § 1101(f)(5) (1996) (emphasis added). Likewise, § 1101(f)(7) reads: "one who *during such period* has been confined ... to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period," cannot be regarded as one with good moral character. 8 U.S.C. § 1101(f)(7) (1996) (emphasis added).

■ These sections specifically provide that ineligibility to prove good character is limited to having been convicted or confined during the specified period of time for which good character needs to be proven. In contrast, § 1101(f)(8) does not limit the preclusive effect of having been convicted of an aggravated felony to "such period", but rather bars from proving good moral character an applicant who at *any time* has been convicted of an aggravated felony. Congress' decision to use the phrase "at any time" for § 1101(f)(8), instead of "during such period," evidences its intent that aggravated-felony convictions be an absolute bar to a finding of good moral character.

The legislative history of the section also supports this conclusion. When Congress amended the portion of the Immigration and Naturalization Act codified by 8 U.S.C. § 1101(f)(8), by striking "convicted of the crime of murder" and adding "convicted of an aggravated felony," it clarified that a "conviction of murder at any time continues to be considered a bar to good moral character." H.R. No. 383, 102d Cong., 1st Session 3 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1378; *see also,* 8 U.S.C.A. § 1101 note (West Supp.1996) ("The amendment made [which replaced "murder" with "aggravated felony"] shall take effect on the date of the enactment of this Act ... and shall apply to convictions occurring on or after such date, except with respect to conviction for murder which shall

be considered a bar to good moral character regardless of the date of the conviction.").

 It is evident that Congress intended that any conviction for murder will bar naturalization, regardless of the date of the conviction or the length of the period for establishing good moral character. Castiglia therefore cannot meet the good character requirement for naturalization. It is the impact of 8 U.S.C. § 1101(f) which distinguishes this case from *Santamaria–Ames,* which did not address that statute.

### CONCLUSION

We hold that Castiglia must prove good moral character to be naturalized under 8 U.S.C. § 1440 and that his murder conviction bars such a showing. 8 U.S.C. § 1101(f).

AFFIRMED.