UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1782

NICOLAS ALFONSO BARNES,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

O R D E R

The Court amends its opinion filed November 10, 2010, as follows:

On page 11, lines 4, 12 and 14 of text and line 2 of footnote 3; page 12, line 2 of text –– the reference to "§ 1239.7(f)" is corrected to "§ 1239.2(f)."

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NICOLAS ALFONSO BARNES,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 09-1782

On Petition for Review of an Order of the
Board of Immigration Appeals.

Argued: September 21, 2010

Decided: November 10, 2010

Before WILKINSON, SHEDD, and
DUNCAN, Circuit Judges.

Petition denied by published opinion. Judge Duncan wrote the
opinion, in which Judge Wilkinson and Judge Shedd joined.

## COUNSEL

**ARGUED**: Linda Hanten, HARRIGAN & HANTEN, PC,
Washington, D.C., for Petitioner. Janette L. Allen, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Respondent. **ON BRIEF:** Tony West, Assistant Attorney
General, Civil Division, Thomas B. Fatouros, Senior Litiga-

tion Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

DUNCAN, Circuit Judge:

Nicolas Alfonso Barnes petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ"'s) denial of his motion to terminate removal proceedings. Barnes challenges the BIA's conclusion that an IJ can only terminate removal proceedings pursuant to 8 C.F.R. § 1239.2(f) based on the pendency of a naturalization application if the alien presents an affirmative communication from the Department of Homeland Security ("DHS") confirming that he is prima facie eligible for naturalization. We join every circuit to have considered the issue in finding that the BIA's interpretation of 8 C.F.R. § 1239.2(f) is neither plainly erroneous nor inconsistent with the regulation. Accordingly, we deny the petition for review.

I.

Barnes, a native and citizen of Panama, was admitted to the United States as a permanent resident in 1979. That same year, Barnes joined the United States Army. In 1982, he was convicted by a military court of possessing, transporting, and selling a controlled substance. In 1999, Barnes filed an application for naturalization in which he disclosed that conviction. He was then interviewed by an immigration official, who told him that the conviction was a bar to naturalization and advised him to withdraw his application. Barnes did so in May of 2000.

In March 2004, DHS commenced removal proceedings against Barnes with the issuance of a notice to appear before

an IJ. The notice charged him with removability based on his 1982 conviction. Barnes's initial hearing was postponed to give him an opportunity to secure legal counsel. During an April 2005 hearing, Barnes admitted removability and informed the IJ that he intended to submit an application for relief from removal. The IJ continued the hearing to allow Barnes to prepare that application.

In September 2006, Barnes submitted a second naturalization application. That same month, he submitted a motion to terminate removal proceedings pursuant to 8 C.F.R. § 1239.2(f). That section gives the IJ discretion to "terminate removal proceedings to permit the alien to proceed to a final hearing" on his naturalization application if the IJ finds that the case involves "exceptionally appealing or humanitarian factors." 8 C.F.R. § 1239.2(f). To be eligible for relief under § 1239.2(f), the alien must have "established prima facie eligibility for naturalization." *Id.* The IJ denied Barnes's § 1239.2(f) motion but continued the case to permit DHS to adjudicate Barnes's pending naturalization application.

In March 2007, Barnes appeared before the IJ again on the removal matter and informed him that DHS had scheduled a naturalization interview, but later canceled it. Barnes's counsel indicated to the IJ that he believed the interview would be rescheduled. The IJ granted another continuance to allow Barnes to undergo a naturalization interview. On May 1, 2007, DHS filed a motion before the IJ opposing any further continuances of Barnes's removal proceedings. Three days later, Barnes wrote to DHS requesting that his naturalization interview be rescheduled. He also requested a letter stating that he was prima facie eligible for naturalization, which he intended to submit in support of a second § 1239.2(f) motion. Then, on May 16, 2007, Barnes filed before the IJ a second motion to terminate removal proceedings, a motion to stay proceedings, and a motion to apply for a deportation waiver under § 212(c) of the Immigration and Naturalization Act ("INA"), Pub. L. No. 82-414, 66 Stat. 163.

On July 10, 2007, the IJ issued an order denying all of Barnes's motions and ordering his removal. Barnes appealed to the BIA asserting, among other things, that he was entitled to relief under § 1239.2(f). The BIA upheld the IJ's decision and dismissed Barnes's appeal. With regard to his § 1239.2(f) motion, the BIA held:

> Removal proceedings . . . may only be terminated pursuant to 8 C.F.R. § 1239.2(f) where the DHS has presented an affirmative communication attesting to the alien's prima facie eligibility for naturalization. . . . As no such communication was presented, the respondent's motion to terminate or stay these proceedings is denied.

J.A. 332. The BIA based this determination on its decision in *Matter of Acosta-Hidalgo*, 24 I. & N. Dec. 103 (BIA 2007), which held that "it is appropriate for the Board and the Immigration Judges to require some form of affirmative communication from the DHS prior to terminating proceedings based on [an alien's] pending naturalization application." *Id.* at 106. Barnes petitions this court for review of the BIA's dismissal of his appeal.

## II.

Barnes asserts that the BIA's interpretation of § 1239.2(f), adopted in *Hidalgo* and applied in this case, is erroneous.[1] He argues that the plain language of the regulation vests IJs with authority to make prima facie naturalization eligibility determinations. He further alleges that the *Hidalgo* interpretation of § 1239.2(f) "thwarts [his] right to have his naturalization application timely adjudicated and to pursue, if necessary, judicial review." Petitioner's Br. at 20.

---

[1]Barnes does not challenge any of the BIA's or IJ's other holdings.

We review the BIA's legal determinations de novo, "affording appropriate deference to the BIA's interpretation of the INA and any attendant regulations." *Li Fang Lin v. Mukasey*, 517 F.3d 685, 691-92 (4th Cir. 2008). Because the BIA's holding involves an agency's interpretation of its own regulation, it "is entitled to deference 'unless plainly erroneous or inconsistent with the regulation.'" *AES Sparrows Point LNG, LLC v. Wilson*, 589 F.3d 721, 729-30 (4th Cir. 2009) (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 672 (2007)); *see also Perriello v. Napolitano*, 579 F.3d 135, 138 (2d Cir. 2009)("[W]e owe deference to the BIA's interpretation of its own regulations, and the BIA's interpretation will be 'controlling unless plainly erroneous or inconsistent with the regulation.'" (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997))).

We first set forth the relevant legal background leading to the BIA's decision in *Hidalgo*. We then address Barnes's contentions in turn.

## A.

Section 1239.2(f) states:

> An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization *when the alien has established prima facie eligibility for naturalization* and the matter involves exceptionally appealing or humanitarian factors; in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

8 C.F.R. § 1239.2(f) (emphasis added). The BIA has long held that an IJ lacks jurisdiction to make a prima facie determination of eligibility for purposes of terminating removal. In

*Matter of Cruz*, 15 I. & N. Dec. 236 (BIA 1975), a case addressing the substantively identical predecessor to § 1239.2(f), 8 C.F.R. § 242.7,[2] the BIA held that deportation proceedings could only be terminated to allow an alien to proceed with an application for naturalization if "prima facie eligibility [was] established by an affirmative communication from [DHS] or by a declaration of a court that the alien would be eligible for naturalization but for the pendency of the deportation proceedings or the existence of an outstanding order of deportation." *Id.* at 237. The *Cruz* panel reasoned that because "neither [the BIA] nor immigration judges have authority with respect to the naturalization of aliens," they do not have jurisdiction over the "question of whether an alien is eligible for naturalization" for purposes of terminating removal proceedings. *Id.*

The Immigration Act of 1990, Pub. L. No. 101-649, § 401(a), 104 Stat. 4978 (1990) (codified at 8 U.S.C. § 1421(a)), changed the legal landscape on which *Cruz* was based by divesting district courts of authority to consider naturalization applications in the first instance. The Act transferred sole authority in that regard to the Attorney General. *See* 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."); *see also Perriello*, 579 F.3d at 139-41 (discussing the statutory history relating to this change). It thus called into question the continuing validity of *Cruz*'s holding that both DHS and the district courts could make a finding of prima facie eligibility for naturalization. *See Perriello*, 579 F.3d at 140 (collecting cases that "questioned whether the BIA could continue to rely on courts to issue dec-

---

[2]The differences between the two regulations are quite minor. Section 242.7 uses the word "deportation" instead of "removal" and the word "respondent" instead of "alien." Also, § 242.7 states that the IJ "may, in his discretion, terminate" removal proceedings, while § 1239.2(f) states more succinctly that the IJ "may terminate" them. Otherwise the two provisions are identical.

larations as to prima facie eligibility for naturalization" following the enactment of § 1421(a)).

The BIA resolved this tension in *Hidalgo*. It found that "the fact that the Federal courts no longer have authority to make decisions as to an alien's prima facie eligibility for citizenship does not undermine *Matter of Cruz*" and that therefore "neither the Board nor the Immigration Judges have jurisdiction to determine an alien's eligibility for naturalization, which now lies exclusively with the DHS." *Hidalgo*, 24 I. & N. Dec. at 105-06. The BIA further noted that, because the BIA and IJs do not make naturalization determinations, they lack the expertise necessary to determine prima facie eligibility. *See id.* at 107. The *Hidalgo* panel held that because "neither [it] nor the Immigration Judges have authority to determine his prima facie eligibility for naturalization in order to terminate removal proceedings pursuant to 8 C.F.R. § 1239.2(f)," it is therefore "appropriate for the Board and the Immigration Judges to require some form of affirmative communication from the DHS prior to terminating proceedings based on [an alien's] pending naturalization application." *Id.* at 106.

## B.

Barnes mounts two challenges to the BIA's holding in *Hidalgo*. First, he argues that the plain language of § 1239.2(f) compels the conclusion that IJs have the authority to make prima facie determinations of naturalization eligibility. We join the four other circuits to have addressed the issue in rejecting that contention. *See Ogunfuye v. Holder*, 610 F.3d 303, 308 (5th Cir. 2010); *Zegrean v. Att'y Gen. of United States*, 602 F.3d 273, 274-75 (3d Cir. 2010); *Perriello v. Napolitano*, 579 F.3d 135, 142 (2d Cir. 2009); *Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 933-34 (9th Cir. 2007).

Contrary to Barnes's argument, nothing in the language of the regulation specifies who is to make the prima facie eligibility determination. *See Anderson*, 497 F.3d at 934 ("The text

of the regulation does not specifically authorize IJs to evaluate prima facie eligibility."). The regulation simply states that an alien is eligible for discretionary relief under that section if he "has established prima facie eligibility for naturalization." 8 C.F.R. § 1239.2(f). Because § 1239.2(f) leaves open the question of who has the authority to make that determination, we must defer to the BIA's gap-filling interpretation as long as it is not clearly erroneous. *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (explaining that the BIA should be accorded deference "as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication'" (citation omitted)); *see also Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 850 (8th Cir. 2008) ("We generally defer to reasonable BIA interpretations of gaps in statutes and regulations it administers.").

The BIA interpretation before us is deserving of deference for several reasons. First, given that DHS is the only body statutorily vested with the power to make naturalization decisions in the first instance, *see* 8 U.S.C. § 1421(a), it is reasonable to conclude that only DHS has the authority to make prima facie determinations of naturalization eligibility. *See Zegrean*, 602 F.3d at 275 ("[T]he BIA's conclusion in *Hidalgo* that it cannot consider eligibility is consistent with 8 U.S.C. § 1421."); *Perriello*, 579 F.3d at 142 (same). Also, by virtue of its adjudicatory function, DHS has the greatest institutional expertise regarding the standards for naturalization eligibility. By contrast, as the *Hidalgo* panel noted, the BIA and IJs "not only lack jurisdiction over the ultimate issue, but may also lack expertise as to the specific issue regarding prima facie eligibility." 24 I. & N. Dec. at 108; *see also Zegrean*, 602 F.3d at 275. An interpretation of § 1239.2(f) that fills that regulation's gap by placing the prima facie eligibility decision in the hands of the only entity that has the clear authority and requisite expertise to make it can scarcely be said to be clearly erroneous.

Furthermore, vesting DHS with sole authority over the prima facie determination is consistent with the regulation's

clear intent to have the removal proceedings of non-qualifying aliens "completed as promptly as possible." 8 C.F.R. § 1239.2(f). Such purpose is best served by an accurate prima facie determination in the first instance, for an erroneous determination that has to be later revisited would lead to unnecessary delays in the removal process. Since, as we have explained, DHS is best suited to make an accurate prima facie finding based on its adjudicatory experience and expertise, an interpretation giving DHS exclusive authority over that finding furthers the regulation's purpose. *See Anderson*, 497 F.3d at 935 (finding that an interpretation of § 1239.2(f) that would allow a finding of prima facie eligibility by an IJ would be inefficient and therefore contrary to the regulation's purpose).

## C.

Barnes next asserts that the BIA's interpretation in *Hidalgo* deprives him of "the right of judicial review of a denied naturalization application." Petitioner's Br. at 12. Barnes argues that such a right is grounded in 8 U.S.C. § 1421(c), which states that "[a] person whose application for naturalization under this title is denied, after a hearing before an immigration officer . . . may seek review of such denial before the United States district court." However, any right that Barnes might have under § 1421(c) is limited by 8 U.S.C. § 1429, which states that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding."

When interpreting a statute, "rules of statutory construction require that we give meaning to all statutory provisions and seek an interpretation that permits us to read them with consistency." *United States v. Fisher*, 58 F.3d 96, 99 (4th Cir. 1995). A harmonious reading of § 1421(c) and § 1429 leads to the conclusion that an alien has a statutory right to review of his naturalization application, unless he is in removal proceedings. As several courts have found, in passing § 1429 Congress clearly intended to give removal proceedings prior-

ity over naturalization. *See Zegrean*, 602 F.3d at 274 (explaining that § 1429 makes clear that "[r]emoval proceedings quite simply have priority over naturalization applications"); *Perriello*, 579 F.3d at 139 (explaining that § 1429 "afforded [priority to] removal proceedings" over naturalization proceedings). For this reason, § 1429 has become known as the INA's "priority provision." *See Ajlani v. Chertoff*, 545 F.3d 229, 236 (2d Cir. 2008); *Bellajaro v. Schiltgen*, 378 F.3d 1042, 1045 (9th Cir. 2004).

Because, under § 1429, an alien in removal proceedings does not have a right to have his application adjudicated, it follows that he cannot possibly have a right to have the adjudication judicially reviewed. *See Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004) ("A district court . . . can review only those decisions that § 1429 permits the Attorney General to make, of course."); *Bellajaro*, 378 F.3d at 1047 (holding that, when the Attorney General has not made a determination on the merits of a naturalization application due to § 1429, "the district courts, which no longer have authority to naturalize, cannot make [that determination] in the first instance"). Accordingly, as an alien in removal proceedings, Barnes had no statutory right to review of his naturalization application.

Barnes suggests that § 1239.2(f) was intended to provide an avenue around the priority provision of § 1429 by serving "as a mechanism providing qualified aliens in removal proceedings the right to pursue their pending naturalization application . . . and . . . insure that such applicants have the right to pursue judicial review." Petitioner's Br. at 28-29. Even assuming that Barnes's suggestion is correct, nothing in the *Hidalgo* interpretation is necessarily inconsistent with that alleged purpose.[3] While it is true that § 1429 forecloses con-

---

[3]Barnes also asserts that the Hidalgo interpretation is unfair because it "reduc[es] an alien's ability to pursue his statutory rights to the exclusive, unreviewable whim of the DHS." Petitioner's Br. at 29. We note that, as discussed above, an alien in removal proceedings has no statutory right to

sideration of a naturalization application, we are aware of no statutory provisions or regulations that require DHS to consider an application per se before making a prima facie eligibility determination. The juxtaposition of § 1239.2(f) and § 1429 leaves room for the possibility, confirmed by the government at oral argument,[4] that DHS could make a prima facie determination without actually considering an alien's application.[5] Petitioner points to nothing that would preclude an alien from submitting proof of prima facie eligibility in a form separate from and independent of his naturalization application and requesting an affirmative communication in that regard. Therefore, even assuming that § 1239.2(f) is intended to provide relief in spite of § 1429, the *Hidalgo* interpretation of § 1239.2(f) is not necessarily in conflict with the possibility of such relief.[6]

---

review of his naturalization application due to the bar created by § 1429. Absent the implementation by DHS of its regulation, § 1239.2(f), such an alien would not have any possibility of review. Therefore we find it reasonable that DHS would have the authority to limit the scope of such discretionary relief, which is only available by virtue of its own regulation. *See Anderson*, 497 F.3d at 935 (rejecting the argument that, through the *Hidalgo* interpretation, the "Attorney General and, derivatively, the DHS have been given too much authority over naturalization and removal decisions").

[4]Counsel for the government stated at oral argument that DHS can, and routinely does, make prima facie determinations outside of the context of a naturalization application.

[5]The BIA panel in *Hidalgo* seems to have considered this possibility. The panel noted: "We do not have authority to compel the DHS to *acknowledge the respondent's eligibility* for naturalization. Nor can we sanction the agency for improperly *entertaining the respondent's naturalization* application on the merits while also prosecuting him in removal proceedings." 24 I. & N. Dec. at 107 (emphasis added) (internal citation omitted). In so stating, the panel appears to contemplate a distinction between acknowledging prima facie eligibility and entertaining a naturalization application in violation of § 1429.

[6]Barnes also argues that the *Hidalgo* interpretation "denied [his] right to compel a decision under INA § 336(b) [codified at 8 U.S.C.

### III.

For the reasons stated above, we hold that the interpretation of § 1239.2(f) adopted in *Hidalgo* and applied by the BIA in this case is neither clearly erroneous nor inconsistent with the regulation. We therefore deny Barnes's petition for review.

*PETITION DENIED*

---

§ 1447(b)]." Petitioner's Br. at 18. Section 1447(b) provides that an applicant may file an action in federal district court if DHS fails to approve or deny a naturalization application within 120 days of the applicant's examination. 8 U.S.C. § 1447(b). As discussed above, due to the pendency of removal proceedings against him, Barnes had no statutory right to adjudication of his application. In any event, § 1447(b) did not apply here because DHS never held an examination for Barnes's naturalization application. Barnes does not argue that he would be entitled to compel the scheduling of an interview. Therefore the *Hidalgo* interpretation did not deprive Barnes of a right under § 1447 because, even if the IJ had cancelled removal proceedings, no such right would have been triggered in Barnes's case.