[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14342
Non-Argument Calendar
_____

Agency No. A013-370-126

FREDY GUTIERREZ CASTILLO,
a.k.a. Freddy Gutierrez,
a.k.a. Freddy Gugierrez,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 14, 2015)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Fredy Gutierrez Castillo, a native and citizen of Colombia who served in the United States Armed Forces during the Vietnam War, has petitioned for review of a decision of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") determination that he was removable for having been convicted of an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Castillo contends that the IJ erroneously found a prior drug conviction to be a "drug trafficking" aggravated felony, that the BIA should have corrected this error, and that removal proceedings should have been continued or terminated pending consideration of Castillo's naturalization application under 8 U.S.C. § 1440 (concerning naturalization for certain veterans). As part of our review of this petition, we are asked to decide whether the BIA's interpretation of a regulation in *Matter of Acosta Hidalgo*, 24 I. & N. Dec. 103 (BIA 2007), is entitled to our deference. After careful review, we deny the petition for review.[1]

## I.

Castillo was admitted to the United States as a lawful permanent resident in 1965. He was eleven years old at the time. He served in the United States Army in Vietnam from 1971 to 1973, when he was honorably discharged. After his discharge, Castillo filed a petition for naturalization with the former Immigration

---

[1] Castillo expressly does not challenge the BIA's determination that he was not entitled to relief from removal under former 8 U.S.C. § 1182(c); current 8 U.S.C. § 1182(h); or the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 8 C.F.R. § 208.16(c). Consequently, we do not address these issues.

and Naturalization Service ("INS"). However, INS dismissed his naturalization petition for failure to prosecute in May 1973. Castillo did not attend a scheduled interview on the petition, of which he may have lacked notice.

In 2010, the Department of Homeland Security ("DHS") served Castillo with a Notice to Appear ("NTA"), charging him as removable from the United States on several grounds. The NTA alleged that Castillo had three convictions for aggravated felonies, as defined by 8 U.S.C. § 1101(a)(43), which each made him subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii). These prior convictions under Florida law were for the following violations: (1) manufacture of cannabis in September 1992; (2) burglary in October 1987; and (3) attempted second-degree murder in March 1978.[2]

Numerous hearings were held before the IJ to determine whether Castillo was eligible for relief from removal. At a hearing in April 2011, Castillo's counsel agreed with the IJ that Castillo was not eligible to apply for naturalization as a war veteran, under 8 U.S.C. § 1440, because he had a "permanent bar" to naturalization based on an aggravated-felony conviction after his service. At some point thereafter, Castillo filed with the United States Citizenship and Immigration

---

[2] The NTA also lists several other prior convictions: possession of cannabis (1974); possession of cannabis (1976); possession of cocaine (1990); unlawful sale or purchase of cannabis (1990). In subsequent proceedings, it came out that Castillo also had been found to have violated a domestic-violence protective order in 2002 and that he had been convicted of threatening a public official in 2003.

3

Services ("USCIS") a motion to reopen his 1973 naturalization application on a *nunc pro tunc* basis.

At the final hearing before the IJ on January 8, 2013, Castillo moved for a continuance because his motion to reopen his naturalization application was still pending before the USCIS. Noting that Castillo had not provided any evidence indicating that the motion to reopen had been granted or that the USCIS was seriously considering reopening and granting his naturalization application *nunc pro tunc*, the IJ denied a continuance.

Instead, the IJ ordered Castillo removed to Colombia as an aggravated felon, *see* 8 U.S.C. § 1227(a)(2)(A)(iii), specifically finding "that a conviction for manufacture of cannabis is a drug trafficking conviction," and therefore an aggravated felony, *see id.* § 1101(a)(43)(B). The IJ also concluded that Castillo's convictions for burglary and attempted second-degree murder were aggravated felonies.

After the IJ's decision, Castillo retained a different attorney, and he filed a timely appeal to the BIA. In his brief to the BIA, Castillo contended that his 1992 conviction for manufacture of cannabis was not an aggravated felony, in light of the Supreme Court's intervening decision in *Moncrieffe v. Holder*, 569 U.S. ___, 133 S. Ct. 1678 (2013). Castillo also maintained that, contrary to his prior counsel's understanding, he was *prima facie* eligible for naturalization under 8

4

U.S.C. § 1440 based on his military service and did not need to reopen his earlier naturalization petition on a *nunc pro tunc* basis.  Castillo asked for the BIA to remand his case to the IJ for further consideration in light of *Moncrieffe*.

On August 29, 2014, the BIA affirmed the IJ's order of removal.  The BIA noted that Castillo had been charged with three separate grounds of removability based on an aggravated-felony conviction.  It determined that Castillo was removable as charged based on his conviction for attempted second-degree murder, a conviction he had not specifically challenged to the BIA.  In light of that determination, the BIA found it unnecessary to evaluate whether Castillo's convictions for burglary or manufacture of cannabis also were aggravated felonies.[3]  Although the BIA noted that these convictions may be relevant to Castillo's eligibility for naturalization, it, nonetheless, found that they were "not germane to this decision."  The BIA also determined, relying on its decision in *Matter of Acosta Hidalgo*, 24 I. & N. Dec. 103 (BIA 2007), that the IJ properly denied Castillo's request for a continuance because the DHS had not provided an affirmative communication regarding his *prima facie* eligibility to naturalize and had urged that Castillo was ineligible for naturalization.  This petition for review followed.

---

[3] The BIA did note, however, that intervening Supreme Court decisions affected whether Castillo's burglary and manufacture of cannabis convictions could be considered aggravated felonies.  *See Descamps v. United States*, 133 S. Ct. 2276 (2013); *Moncrieffe*, 133 S. Ct. 1678.

## II.

When a petitioner appeals from a final order of removal that is based on a criminal offense covered in 8 U.S.C. § 1227(a)(2)(A)(iii), we have jurisdiction to review only constitutional claims or questions of law.  8 U.S.C. § 1252(a)(2)(C)–(D).  We generally review legal determinations *de novo*.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).

We review only the BIA's decision as the final judgment, unless the BIA expressly adopts the IJ's decision.  *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1289 (11th Cir. 2014).  Where the BIA explicitly agrees with findings of the IJ, we may review the decisions of both the BIA and the IJ as to those issues.  *See Ayala*, 605 F.3d at 948.  Nonetheless, our review is limited to the issues actually decided by the BIA.  *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007); *see I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16-17, 123 S. Ct. 353, 355-56 (2002).

## III.

Castillo contends that, in view of *Moncrieffe*,[4] the IJ erroneously classified his 1992 conviction for manufacture of cannabis as a drug-trafficking aggravated felony, and the BIA erred by declining to correct the error or to remand the case to

---

[4]  In *Moncrieffe*, the Supreme Court held that an alien's conviction for marijuana distribution does not qualify as a drug-trafficking aggravated felony under § 1101(a)(43)(B) unless the offense of conviction categorically involves either remuneration or more than a small amount of marijuana.  133 S. Ct. at 1693-94.

the IJ.  But for the IJ's erroneous determination, he asserts, he would be *prima facie* eligible for naturalization, and his removal proceedings could have been continued or terminated.  Castillo also argues that the BIA's decision in *Acosta Hidalgo* is *ultra vires* to the regulation it purports to interpret.

## A.

We will not address Castillo's contention that the IJ erred in characterizing his conviction for manufacture of cannabis as an aggravated felony, *see* 8 U.S.C. § 110(a)(43)(B), because the IJ's determination was not adopted by the BIA and therefore is not part of the order under review.  *See Malu*, 764 F.3d at 1289; *Lopez*, 504 F.3d at 1344.  In its order, the BIA determined only that Castillo was removable on the basis of his conviction for attempted second-degree murder, *see* U.S.C. § 1101(a)(43)(A) & (U), and expressly declined to consider his other two convictions.  Therefore, the only conviction we may review is for attempted second-degree murder, but Castillo does not contend that the BIA committed any error in this respect.  Because we are not permitted to review his challenge to the manufacture-of-cannabis conviction, Castillo has abandoned any challenge to the substantive basis for his removal.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

Castillo also contends that the BIA erred in declining to review the IJ's determination that his 1992 conviction for manufacture of cannabis was an

7

aggravated felony.    But he has identified no legal authority to support that contention.    Nor would the BIA's decision on this question have affected whether Castillo was removable under § 1127(a)(2)(A)(iii).    Rather, Castillo's primary concern appears to be the effect of the BIA's abstention on his naturalization application, which is an issue intertwined with Castillo's challenge to the BIA's decision in *Acosta Hidalgo*, addressed below.

## B.

Castillo maintains that the BIA's decision in *Acosta Hidalgo* erroneously interprets a regulation permitting IJs to terminate removal proceedings so that a petitioner may pursue a naturalization application with the DHS.

An agency's interpretation of its own ambiguous regulation is controlling "unless plainly erroneous or inconsistent with the regulation."  *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 911 (1997) (internal quotation marks omitted); *Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1307, 1309-10 (11th Cir. 2013).

The regulation at issue, 8 C.F.R. § 1239.2(f), states that an IJ

> may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors; in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

8

In *Acosta Hidalgo*, the BIA determined that, pursuant to § 1239.2(f), an IJ may terminate removal proceedings based on an alien's pending naturalization application only if the DHS has issued an affirmative communication indicating that the alien is *prima facie* eligible for naturalization.  24 I. & N. Dec. at 106 (reaffirming *Matter of Cruz*, 15 I. & N. Dec. 236 (BIA 1975)).  The BIA reasoned that, because "neither the Board nor the [IJs] have jurisdiction to determine an alien's eligibility for naturalization, which now lies exclusively with the DHS," pursuant to 8 U.S.C. § 1421, neither the BIA nor IJs have authority to determine *prima facie* eligibility for naturalization under § 1239.2(f).  *Id.* at 105-06.  Consequently, according to the BIA, "it is appropriate for the Board and the [IJs] to require some form of affirmative communication from the DHS prior to terminating proceedings based on his pending naturalization application."  *Id.* at 106.  The BIA also noted that both it and the IJs may lack expertise to determine an alien's *prima facie* eligibility for naturalization.  *Id.* at 108.

Castillo contends that he is *prima facie* eligible for naturalization under § 1440.  Naturalization under § 1440 is available to certain veterans who have honorably served in active duty in the United States Armed Forces during periods of military hostilities, including the Vietnam War.  8 U.S.C. § 1440; 8 C.F.R. § 329.2; *see generally Nolan v. Holmes*, 334 F.3d 189, 198-201 (2d Cir. 2003).  Section 1440 exempts war veterans from normal residence and physical presence

9

requirements. *Castiglia v. I.N.S.*, 108 F.3d 1101, 1102 (9th Cir. 1997); *see* 8 C.F.R. § 329.2(e). The applicable regulations provide that to be eligible for naturalization under § 1440, a veteran applicant must establish, among other requirements, that he "[h]as been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character." 8 C.F.R. § 329.2(d).

According to Castillo, only his 1992 conviction for manufacture of cannabis could, by regulation, preclude a finding of "good moral character" for purposes of § 1440, and only then if it is classified, erroneously, as an aggravated felony. *See* 8 C.F.R. § 316.10(b)(1)(ii) (providing that an applicant lacks good moral character if the applicant has been convicted of an aggravated felony, as defined in § 1101(a)(43), "on or after November 29, 1990.").[5] *But see* 11 U.S.C. § 1101(f)(8) (stating that no person shall be regarded as a person of good moral character "who at any time has been convicted of an aggravated felony"); *Boatswain v. Gonzales*, 414 F.3d 413, 417-18 (2d Cir. 2005) (holding that the statutory bars listed in § 1101(f), including § 1101(f)(8), apply to the good moral character requirement in § 1440); *Castiglia*, 108 F.3d at 1102-04 (same; stating that Congress intended "that aggravated-felony convictions be an absolute bar to a finding of good moral

---

[5]    Castillo asserts that his conviction for attempted second-degree murder does not preclude a finding of good moral character because it was before November 1990.

10

character"). This question is not at issue, however, so we accept Castillo's assertion as true solely for purposes of this opinion.

We have not previously addressed the soundness of *Acosta Hidalgo*. The six circuit courts that have addressed this issue have unanimously upheld *Acosta Hidalgo*'s interpretation of § 1239.2(f). *See Shewchun v. Holder*, 658 F.3d 557, 562-65 (6th Cir. 2011); *Barnes v. Holder*, 625 F.3d 801, 808 (4th Cir. 2010); *Ogunfuye v. Holder*, 610 F.3d 303, 308 (5th Cir. 2010); *Zegrean v. Att'y Gen. of United States*, 602 F.3d 273, 274-75 (3d Cir. 2010); *Perriello v. Napolitano*, 579 F.3d 135, 142 (2d Cir. 2009); *Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 933-34 (9th Cir. 2007).[6]

We conclude that that *Acosta Hidalgo*'s interpretation of § 1239.2(f) is reasonable and not plainly erroneous or inconsistent with the regulation. *See Auer*,

---

[6] We note that Castillo's case is factually different from these cases because Castillo sought naturalization under § 1440. Although 8 U.S.C. § 1429 generally bars the DHS from considering a naturalization application while removal proceedings are pending, this section does not apply to applications under § 1440. *See* 8 U.S.C. § 1429; 8 C.F.R. § 329.2(e)(3). Some of the cases cited have examined the interplay between 8 C.F.R. § 1329.2(f) and 8 U.S.C. § 1429. *See, e.g.*, *Perriello*, 579 F.3d at 141-42 (upholding *Acosta Hidalgo* but concluding that § 1429 can make it "impossible for an alien to establish prima facie eligibility for naturalization"). Nonetheless, this distinction does not affect our analysis of *Acosta Hidalgo* because the BIA's reasoning does not depend on § 1429, but rather on the DHS's exclusive jurisdiction over naturalization generally, including under § 1440.

Further, we note that Castillo did not move to terminate proceedings under § 1239.2(f) before the IJ, instead moving to continue them. But given that it is unnecessary to terminate removal proceedings for the DHS to consider a § 1440 naturalization application, a continuation in the circumstances of the case would have had a similar practical effect as termination. In addition, as the government notes in its brief, "Castillo . . . seeks either a continuance, remand, or termination of his proceedings so that he may pursue his naturalization application." (Appellee's Br. at 21-22 n.8). With these points in mind, we address *Acosta Hidalgo*.

11

519 U.S. at 461, 117 S. Ct. at 911; *Zhu*, 703 F.3d at 1310; *see also Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 965 n.2 (11th Cir. 2011).  Therefore, we defer to the agency's decision requiring some form of affirmative communication from the DHS before an IJ may terminate removal proceedings based on a pending naturalization application.

Contrary to Castillo's argument, the regulation is not clear that the IJ has "unfettered discretion" to grant or deny a § 1239.2(f) motion.  The regulation provides that the IJ may grant discretionary relief by terminating removal proceedings "when the alien has established prima facie eligibility for naturalization."  8 U.S.C. § 1239.2(f).  But the regulation leaves open "who is to make the prima facie eligibility determination."  *Barnes*, 625 F.3d at 805; *see Hernandez de Anderson*, 497 F.3d at 934 (observing that the regulation does not "specifically authorize IJs to evaluate prima facie eligibility," and concluding that the language of the regulation "arguably implies that an alien shall have established eligibility outside the removal proceeding being conducted by the IJ"); *Nolan*, 334 F.3d at 202 ("The regulation does not specify the manner in which such prima facie eligibility may be established.").  The BIA's gap-filling decision in *Acosta Hidalgo* therefore is not inconsistent with the text of the regulation.  *See Chen*, 672 F.3d at 965 n.2.

The BIA's interpretation is also reasonable.  First, *Acosta Hidalgo* is consistent with § 1421, which provides that "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."[7] *See, e.g.*, *Perriello*, 579 F.3d at 142; *Zegrean*, 602 F.3d at 275.  By regulation, the Attorney General has delegated this authority to the DHS.  *See* 8 C.F.R. § 310.1(b).  As the Fourth Circuit has explained, "given that DHS is the only body statutorily vested with the power to make naturalization decisions in the first instance, it is reasonable to conclude that only DHS has the authority to make prima facie determinations of naturalization eligibility."  *Barnes*, 625 F.3d at 805 (citation omitted).  In addition, as a general matter, the DHS arguably has the greatest institutional expertise regarding the standards for naturalization eligibility, because it is the agency charged with adjudicating naturalization petitions.  *See id.* at 805-06.  However, we note that, in this specific case, *prima facie* eligibility appears to have turned on good moral character, which is within the IJ's expertise.

The BIA's decision in *Acosta Hidalgo* is also consistent with the regulation's general intent to have removal proceedings "completed as promptly as possible notwithstanding the pendency of an application for naturalization during

---

[7] In 1990, Congress divested the federal district courts of authority to consider naturalization applications in the first instance and, through § 1421, transferred sole naturalization authority to the Attorney General.  *Barnes*, 625 F.3d at 804.  This change, in turn, gave rise to the BIA's decision in *Acosta Hidalgo*.  *Id.* at 804-05.  For a thorough overview of the evolution of the statutes and regulations leading up to the present state of naturalization and removal law, see *Perriello*, 579 F.3d at 138-42.

13

any state of the proceedings."  8 C.F.R. § 1239.2(f).  Here, as the BIA noted, the DHS had sought removal and had urged Castillo's ineligibility for naturalization. Had the IJ nonetheless determined that Castillo was *prima facie* eligible for naturalization, continuing or terminating removal proceedings would likely only have caused unjustified delay.  *See Hernandez de Anderson*, 497 F.3d at 935 ("If the DHS has already declined to state that an alien is prima facie eligible for naturalization, terminating the removal proceedings under § 1239.2(f) is likely to produce unwarranted delay.").

Consequently, we conclude that the BIA's interpretation of § 1239.2(f) in *Acosta Hidalgo* is reasonable and not inconsistent with the regulation.

## IV.

We, like the IJ and the BIA, do not take lightly Castillo's honorable service to the United States, nor are we unaware of the strong ties Castillo has to the this country.  However, for the reasons discussed above, we must **DENY** Castillo's petition for review.

14