Filed 5/31/23  P. v. Villa CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALMA ROSAS VILLA,<br><br>    Defendant and Appellant. | F085202<br><br>(Super. Ct. No. VCF212391A)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Law Office of Hristo Bijev and Hristo Bijev for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Dina Petrushenko, for Plaintiff and Respondent.

-ooOoo-

Defendant Alma Rosas Villa appeals the denial of a motion under Penal Code section 1473.7, subdivision (a)(1)[1] to vacate her 2008 plea of no contest to felony welfare

---

**1**    Undesignated statutory references are to the Penal Code.

fraud. The trial court determined Alma failed to prove (1) she did not meaningfully understand the immigration consequences of her plea and (2) her error was prejudicial. We decide whether Alma established a prejudicial error in her understanding of the immigration consequences by applying the independent standard of review adopted in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*) and confirmed in *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*) to the cold record presented to the trial court.

First, the Attorney General has conceded the trial court erred in finding Alma meaningfully understood the adverse immigration consequences of her plea based on a section 1016.5 advisement that the conviction *may have* the consequences of deportation, exclusion from admission to the United States, or denial of naturalization. Based on our independent review of the record, we agree. The evidence establishes it is more likely than not that Alma did not meaningfully understand and accept the immigration consequences of her plea. We follow *Espinoza* and several older cases that conclude the section 1016.5 advisement that the conviction *may have* adverse immigration consequences does not establish that the defendant meaningfully understood the *mandatory* immigration consequences of a plea.

Second, applying the independent review standard to the issue of prejudice, we find there is reasonable probability that Alma would have rejected the plea if she had correctly understood the adverse immigration consequences. At the time of the 2008 plea, she had lived in the United States since arriving in 1994 and had two daughters, then nine and six years old, who were United States citizens. The reasonable probability standard is met because this objective evidence of her ties to the United States adequately corroborates her declaration testimony addressing prejudice.

We therefore reverse the order denying the section 1473.7 motion.

2.

**FACTS**

*Personal Ties*

Alma was born in Mexico in November 1973 and came to the United States in 1994. She and Jose Torres Frausto, who was born in Mexico in 1968, have two daughters and a son. The children were all born in the same Porterville hospital and they are citizens of the United States. The daughters were born in March 1999 and March 2002. The son was born in February 2012, after the plea that is the subject of this appeal. The record includes a copy of a California driver's license issued to Alma in July 2017, which contains an address near Porterville. It also includes a copy of the social security and permanent resident cards of Amparo Torres De Frausto, who was born in Mexico in 1945. It is unclear from the record if Amparo is Jose's mother or is otherwise related to him.

*Charges*

In September 2008, investigators looking into a referral from the Health and Human Services Agency of Tulare County conducted a taped interview of Alma at the site of her employer. Alma reviewed documents with her signature, acknowledged her responsibility to report income, and admitted she submitted documents to the agency that failed to report earnings between 2004 and 2008.

In October 2008, a complaint was filed against Alma and Jose alleging felony violations of Welfare and Institutions Code section 10980, subdivision (c)(2) (count 1-welfare fraud) and Penal Code section 118 (count 2-perjury). The complaint alleged they obtained aid for themselves and their family by means of false representations and, in applying for renewal of aid, falsely stated they continued to meet the conditions for eligibility. In December 2008, an amended complaint was filed, which increased the allegation of the amount of public assistance fraudulently obtained to $18,194. The probation report states $10,433 was for food stamps and $7,761 was cash aid.

3.

*Plea Hearing*

On December 3, 2008, a change of plea hearing was held. Alma was represented by Kimberly Barnett, a deputy public defender, and Jose was represented by attorney Tara Howard. Alma and Jose were assisted by a Spanish language interpreter. Each attorney told the court that their client would enter a plea on count one, count two would be dismissed, and the court had indicated a 180-day sentence with restitution. The court then stated:

> "All right. Each of you are advised that if you're not citizens of this country that conviction of this offense for which you've been charged *may have* the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
>
> "Within the last 24 hours, have either of you taken any drugs or alcohol or medication of any kind that would affect your ability to understand these proceedings today?" (Italics added.)

Alma and Jose answered, "No." While the advisement of the potential immigration consequences complied with section 1016.5, Alma and Jose were not asked on the record if they understood the advisement. There are no signed or initialed plea forms in the record.[2]

On December 23, 2008, the sentencing hearing was held. Alma and Jose appeared at the hearing, were represented by counsel, and were assisted by an interpreter. The probation report stated that Alma had begun making restitution, paying $100 toward the food stamp balance and $100 toward the cash aid balance. It also stated the usual sources had been checked and revealed no prior criminal conduct.

The court granted probation for three years subject to each defendant serving 180 days in custody, paying certain fines and fees, paying the full amount of restitution of

---

**2** Section 1016.5 does not require trial courts to obtain a defendant's oral statement on the record that they understood the advisement or obtain a signed or initialed form acknowledging a defendant received and understood the advisement.

$18,194 (for which they would be jointly and severally liable), and fulfilling other conditions of probation. Among other things, Alma was required to reside in Tulare County, unless given written permission from her probation officer to reside elsewhere, and to seek and maintain employment. Alma and Jose were given staggered remand dates, with Alma reporting in January 2009 and Jose reporting the following June. The immigration consequences of the convictions were not mentioned at the sentencing hearing.

In 2021, Alma's oldest daughter applied to the United States Citizenship and Immigration Service to obtain a green card for Alma based on Alma being a parent of a United States citizen. In response to the daughter's form I-130, "Petition for Alien Relative," the Department of Homeland Security sent a notice dated September 28, 2021, stating the form had been received and was being processed. In a notice dated July 29, 2022, the Department of Homeland Security stated the daughter's "petition has been approved" and described subsequent steps in the process. The notice also advised that approval of the petition did not itself grant any immigration status and did not guarantee that Alma subsequently would be found eligible for a visa, admission to the United States, or an extension, change, or adjustment of status.

### PROCEEDINGS

On September 1, 2022, Alma filed a motion to vacate conviction and withdraw plea under section 1473.7. The motion referred to her daughter's petition and the Department of Homeland Security's notices and asserted Alma was "in the process of receiving her green card and her permanent immigration status so she can stay with her children and family at home in California." The motion was supported with a declaration from Alma and copies of the reporter's transcripts from the December 2008 plea and sentencing hearings.

Alma's declaration stated (1) she did not remember much of the case details because many years had passed, (2) she was represented by a court-appointed attorney

5.

and had an interpreter, (3) she did not remember signing or initialing any papers at the court, (4) she was nervous, afraid and confused when in court, and (5) she has no memory of being told what the immigration consequences were or even hearing the word immigration. Alma's declaration asserts she did not fully and meaningfully understand what the immigration consequences were and how they would affect her in the future and, had she known of the future consequences (which include not being able to receive a green card), she would have fought the case, would have consulted with an immigration attorney to discuss different options, and would have asked for another resolution without immigration consequences. Alma's declaration also stated:

> "I have been living in the US since 1994, paying taxes here and working here and now I am facing the possibility of not receiving a green card and living in exile for the rest of my life. I have 3 children [who] are United States Citizens."

The points and authorities filed with Alma's motion to vacate expanded upon the personal details contained in her declaration by asserting: "Defendant has been living here for many years and her family does not have any place to go or live in Mexico. They do not have a house or job or any means to survive in Mexico. Their life and whole family are all here in the United States." These assertions about the lack of connections to Mexico were not set forth in Alma's declaration.

On September 26, 2022 (two days before the scheduled hearing) the Tulare County District Attorney's Office (prosecutor) filed an opposition to the motion. No declarations or other evidence was submitted with the opposition. Nonetheless, the opposition asserted facts outside the record by stating Alma did not fully pay the restitution and she had an outstanding balance of $283.00.

On September 27, 2022, Alma filed a reply that, among other things, referred to cases that had addressed the effectiveness of an advisement that the conviction "may have" adverse immigration consequences.

6.

At the September 28, 2022 hearing, Alma was present with her attorney. The trial court noted that an interpreter was not present and stated it intended "to simply set the matter over, giving the prosecutor an adequate time to evaluate the reply which was untimely." The court set a new hearing date and stated: "Defendant needs to be present. Counsel needs to be present. And hopefully, parties will meet and confer before then to discuss resolution."[3] The court also provided the following advice to Alma's attorney: "You should timely file your reply papers, Counsel. That would have been helpful. [¶] In any event, now you'll make the return trip." Rather than point out that his reply had been filed the day after the untimely opposition, Alma's attorney said: "Thank you, your Honor." On October 6, 2022, the prosecutor filed a reply to Alma's reply to the opposition.

The October 11, 2022 hearing opened with the trial court stating: "Alma Villa, with the interpreter, please. [¶] Defendant is present out of custody." The court also identified the attorneys appearing in the matter and trailed the hearing to allow the attorneys time to meet and confer. When no resolution was reached and the hearing resumed, the court stated the prosecutor's reply to Alma's reply was completely inappropriate and the court did not consider it. The court then asked Alma's counsel: "[D]o you have any further comments on yours." "Yours" appears to refer to his moving and reply papers.[4] The court then heard argument from both sides. Neither attorney attempted to call Alma or any other witness.

At the conclusion of counsel's argument, the trial court announced its rationale for denying the motion. The court stated Alma had not proven an error occurred, noting

---

**3**    Alma's counsel may have inferred from the court's statement that Alma needed to be present at the rescheduled hearing that the court intended to have Alma present oral testimony at that hearing.

**4**    As suggested at oral argument, Alma's counsel might have interpreted the reference to "further comments" to be a directive from the court to present arguments, rather than testimony from Alma.

7.

"[t]he transcript clearly shows that the Court properly advised [Alma] of the immigration consequences under the code at the time of the plea." The court also found Alma's "self-serving declaration on this issue inherently suspect based on her written claim that the Judge did not tell her anything regarding the consequence when the record is clearly contrary."[5] The court noted the absence of any testimony or declaration from Alma's plea counsel corroborating Alma's testimony[6] and the absence of "any evidence or analysis from an immigration legal expert indicating that her conviction caused her to become permanently ineligible from becoming a citizen at the time of her plea in 2008." The court also addressed Alma's showing of prejudice and concluded she had not met her burden of showing any error was prejudicial. Among the factors discussed by the court were Alma's ties to the United States. The court stated Alma's "declaration is lacking since there is nothing about how and why she came to the US, the persons with whom she lived upon arrival, and her present family status, her employment history, or her good citizenship."[7]

Alma filed a timely appeal.

---

[5] Applying the independent review standard, we interpret Alma's declaration as a whole rather than each sentence in isolation. Accordingly, we treat the sentence stating that "I am sure that neither the Interpreter, Attorney or the Judge told me anything regarding the immigration consequences" as being qualified by the next sentence, which stated: "Many years have passed and I do not remember what happen[ed] in the Court." Consistent with this interpretation, Alma's declaration also stated she did "not have any memory of being told what the immigration consequences are and that I cannot receive a green card" and that she did not "remember the Judge telling me anything regarding immigration consequences or even the word immigration." To summarize, we interpret Alma's statement about being "sure" to mean she was certain that she did not remember being told anything about immigration consequences.

[6] "A party seeking relief under section 1473.7 is not required to provide the declaration of plea counsel." (*Espinoza*, *supra*, 14 Cal.5th at p. 325, citing *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 909.)

[7] Under the totality of the circumstances test, the absence of these particular details is not determinative. In *Espinoza*, the court explained that "no single type of evidence is a prerequisite to relief." (*Espinoza*, *supra,* 14 Cal.5th at p. 321.)

# DISCUSSION

## I.  OVERVIEW OF SECTION 1473.7

In 2016, the Legislature considered the problems faced by defendants "who were unaware of the immigration consequences posed by a plea entered many years earlier." (*Vivar, supra,* 11 Cal.5th at p. 523.)  The Legislature adopted section 1473.7 to make relief available "to certain immigrants who accepted pleas without understanding the immigration-related consequences of such decisions." (*Vivar, supra,* at pp. 523, 528.)

Section 1473.7, subdivision (a) provides in part:

> "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence [if] … :  [¶]  (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

The moving party has the burden of proving, by a preponderance of the evidence, the existence of grounds for relief.  (§ 1473.7, subd. (e)(1); see *Vivar, supra*, 11 Cal.5th at p. 517.)  "[T]he moving party shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1).)  When a motion to vacate a conviction is granted, "the court shall allow the moving party to withdraw the plea." (§ 1473.7, subd. (e)(3).)

"A successful section 1473.7 motion requires a showing, by a preponderance of the evidence, of a *prejudicial* error that affected the defendant's ability to meaningfully understand the actual or potential immigration consequences of a plea." (*Vivar, supra*, 11 Cal.5th at p. 517.)  To establish an error was prejudicial for purposes of section 1473.7, "a defendant must demonstrate a 'reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 316.)  Furthermore, the

9.

defendant's assertions about rejecting the plea bargain must be corroborated by objective evidence. (*Ibid.*) "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Id.* at p. 321.)

Appellate court's apply independent review when assessing whether a defendant has demonstrated a prejudicial error. (*Vivar, supra,* 11 Cal.5th at p. 526.) Under this standard of review, an appellate court exercises its independent judgment to determine whether the facts satisfy the applicable rule of law. (*Id.* at p. 527.) When, as here, a trial court's factual findings are derived entirely from written declarations, transcripts, and other documents (i.e., a cold record), the trial court and appellate courts are in the same position and deference to the trial court's findings is unwarranted. (*Id.* at p. 528.) In such cases, " 'it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 320.)

## II.     THE HEARING ON THE MOTION

### A.     No Requirement for Live Testimony

Alma's opening brief raises the procedural issue of whether a trial court must conduct an evidentiary hearing and receive a defendant's testimony before denying a section 1473.7 motion. Alma contends that if an evidentiary hearing is required, this case should be remanded to the trial court for such a hearing. Alma's brief states she did not find any case addressing this specific issue and discusses *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183 (*Zamudio*), a case involving a motion to withdraw a plea pursuant to section 1016.5, subdivision (a). In *Zamudio*, the court addressed whether the trial court abused its discretion by denying a further evidentiary hearing and deciding the motion based on the parties' written submissions. (*Zamudio, supra,* at p. 201.) The court stated:

"Petitioner cites no authority specifically requiring courts to hold live evidentiary hearings on section 1016.5 motions or, more generally, on plea withdrawal motions. On the other hand, California law affords numerous examples of a trial court's authority, in ruling upon motions, to resolve evidentiary disputes without resorting to live testimony." (*Ibid*.)

As a result, the court stated it would not "burden trial courts with a requirement that they conduct live evidentiary hearings on all section 1016.5 motions." (*Zamudio*, *supra*, 23 Cal.4th at p. 201.)

Section 1473.7 includes a provision explicitly addressing hearings, which states:

"All motions shall be entitled to a hearing. Upon the request of the moving party, the court may hold the hearing without the personal presence of the moving party provided that it finds good cause as to why the moving party cannot be present. If the prosecution has no objection to the motion, the court may grant the motion to vacate the conviction or sentence without a hearing." (§ 1473.7, subd. (d).)

This language plainly requires a hearing be held on a section 1473.7 motion, except when there is no objection to the motion and the court grants the motion. (See *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 977.) The phrase "entitled to a hearing" does not explicitly require the trial court to conduct an evidentiary hearing at which live testimony is taken. Based on the text and the case law existing at the time section 1473.7 was enacted, which allowed plea withdrawal motions to be decided without taking live testimony, we will not infer the Legislature intended to impose a sua sponte duty on trial courts to hear live testimony at the hearing. (See *Zamudio*, *supra*, 23 Cal.4th at p. 201; Code Civ. Proc., § 1858 [courts should not insert that which the Legislature has omitted].) Interpreting the statute to mean there is no sua sponte obligation is compatible with the following statement by our Supreme Court: "In addition to submitting declarations, both parties are entitled to request an evidentiary hearing. (§ 1473.7, subd. (d).)" (*Espinoza*, *supra*, 14 Cal.5th at p. 325.) Here, neither side asked, before or during the hearing, to call a witness.

11.

B.    Role of Moving Party's Declaration

Alma's opening brief also raises the issue whether the trial court is obligated to accept and consider in full the moving party's declaration. Alma contends that if her declaration is accepted and given full force and effect, then she met her burden of proof and it was an abuse of discretion to deny the motion.

Before the trial court heard from counsel at the October 11, 2022 hearing, the trial court stated: "I have read and considered the moving papers from defendant, the opposition papers from the People, and then defendant's reply." Alma's moving papers included her declaration. Therefore, we interpret the trial court's statement that it read and considered the moving papers to mean that the trial court read and considered (i.e., weighed) Alma's declaration and the other exhibits to her motion. This interpretation is confirmed by the trial court's explicit references to the contents of the declaration. Accordingly, we conclude the trial court did not violate its duty to consider the evidence presented in support of the section 1473.7 motion. (See *Espinoza*, *supra*, 14 Cal.5th at p. 321 [objective evidence supporting a § 1473.7 motion "includes facts provided by declarations"].) To the extent that Alma may be arguing the trial court was required to accept the assertions of fact set forth in her declaration, we are aware of no authority imposing such a requirement when a court evaluates whether the moving party has carried his or her burden of proof or the credibility of a declaration's contents. Therefore, we conclude the trial court did not commit procedural error by failing to accept the truth of the facts stated in Alma's declaration.

On another procedural point, Alma's motion must be deemed timely pursuant to the general rule set forth in subdivision (b)(1) of section 1473.7 because the triggering events identified in subdivision (b)(2) have not occurred. (See *People v. Alatorre* (2021) 70 Cal.App.5th 747, 756–757; *People v. Perez* (2021) 67 Cal.App.5th 1008, 1016.)

12.

III.    DEFENDANT'S MISUNDERSTANDING

It is well established that a defendant's own error in understanding the immigration consequences of the plea is a basis for relief under section 1473.7, subdivision (a)(1). (*People v. Alatorre, supra,* 70 Cal.App.5th at pp. 768–769; *People v. Mejia* (2019) 36 Cal.App.5th 859, 871; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1009.) In *Alatorre*, the court reviewed the case law and stated that "cases have uniformly followed the lead of *Camacho* and *Mejia*, concluding that a petitioner's own subjective error qualifies for relief under the statute if the evidence shows he or she misunderstood the immigration consequences of a plea deal." (*Alatorre*, *supra*, at p. 769.) Based on this precedent, Alma need not prove that (1) the trial court erred in advising her of the immigration consequences of her plea or (2) the deputy public defender provided ineffective assistance during the plea process.

A.    <u>Immigration Consequences of the Conviction</u>

The immigration consequences of a conviction depend on how the crime is classified by federal law. Federal statute defines an offense involving fraud or deceit in which the loss to the victim exceeds $10,000 as an aggravated felony. (8 U.S.C. § 1101(a)(43)(M)(i).) Welfare and Institutions Code section "10980(c)(2) contains an inherent element of fraud or deceit and therefore is an aggravated felony." (Kesselbrenner & Rosenberg, 1 Immigration Law and Crimes (Winter Ed./2022) § 7:31, p. 645; see *De Gomez v. Holder* (2012) 471 Fed.Appx. 591, 592 [welfare fraud is an aggravated felony]; *Ferreira v. Ashcroft* (9th Cir.2004) 390 F.3d 1091, abrogated on other grounds by *Nijhawan v. Holder* (2009) 557 U.S. 29.)

A person "who at any time has been convicted of an aggravated felony" shall not be regarded as a person of good moral character. (8 U.S.C. § 1101(f)(8).) Thus, a person convicted of an aggravated felony "cannot meet the good character requirement for naturalization." (E.g., *Castiglia v. INS* (9th Cir. 1997) 108 F.3d 1101, 1104.) In addition,

a person convicted of an aggravated felony is ineligible for the discretionary forms of relief, such as asylum. (*Moncrieffe v. Holder* (2013) 569 U.S. 184, 187.)[8]

Consequently, we conclude as a matter of law that Alma carried the burden of demonstrating her conviction for welfare fraud has "the potential to cause … the denial of an application for an immigration benefit, lawful status, or naturalization" for purposes of subdivision (e)(1) of section 1473.7. The respondent's brief filed by the Attorney General concedes this point. Because the adverse immigration consequences are clearly shown by federal statute and case law addressing welfare fraud convictions, a declaration from an immigration attorney addressing the potential for adverse immigration consequences is not necessary.

B.     Effect of Section 1016.5 Advisement

During the December 2008 plea hearing, the trial court advised the defendants that the conviction "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." This oral advisement satisfied the court's obligation under section 1016.5, subdivision (a), which provides: "Prior to acceptance of a plea of guilty … to any offense punishable as a crime under state law … the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

The trial court did not ask Alma if she understood the advisement, did not ask if she had any questions about immigration consequences, and did not ask if she needed

---

[8]     Other courts have recognized that felony welfare fraud in violation of Welfare and Institutions Code section 10980, subdivision (c)(2) constitutes a crime involving moral turpitude for purposes of federal immigration law. (*Valenzuela Garcia v. Holder* (9th Cir. 2012) 469 Fed.Appx. 551, 552; *Casarez v. Holder* (9th Cir. 2011) 425 Fed.Appx. 603.)

additional time to discuss those consequences with her attorney.[9]  Thus, Alma's circumstances are similar to those presented in *Espinoza*, *supra*, 14 Cal.5th 311, another case from Tulare County involving a plea entered in the first decade of this century. There, the trial court gave the general advisement under section 1016.5 and our Supreme Court stated "[i]t appears the court made no further inquiry into [the defendant's] understanding or offer to answer any questions he might have had."  (*Espinoza, supra,* at p. 318.)  The Supreme Court concluded Espinoza did not meaningfully understand the immigration consequences of his plea despite the trial court providing a general advisement under section 1016.5 that his conviction may have immigration consequences.  (*Espinoza*, *supra*, at p. 320.)

An important aspect of the advisement is its use of the words "may have."  These words do not inform Alma that a *mandatory* immigration consequence was the denial of naturalization.  Before *Espinoza* and the trial court's ruling in this case, decisions of the Court of Appeal concluded the generic advisement in section 1016.5 was insufficient to establish the defendant understood the mandatory immigration consequences of the conviction.  (E.g. *People v. Lopez* (2022) 83 Cal.App.5th 698, 712 ["advisement that appellant *may* face certain adverse immigration consequences was insufficient to inform appellant that the conviction would subject him to mandatory deportation and permanent exclusion from the United States"]; *People v. Soto* (2022) 79 Cal.App.5th 602, 609; *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1065.)  Consistent with the outcome in *Espinoza*, we conclude the general advisement Alma was given at the time of her plea does not establish she meaningfully understood and accepted the adverse immigration consequences of her plea.  (See *People v. Patterson* (2017) 2 Cal.5th 885, 889, 898 [a

---

[9]    Section 1016.5 does not require trial courts to ask these questions before accepting a plea.  Thus, we reiterate that, at the time of the plea, the trial court complied with the requirements of section 1016.5.  (See fn. 2, *ante*.)  Nonetheless, the absence of these questions is part of the surrounding circumstances relevant to evaluating a defendant's understanding at the time of the plea.

§ 1016.5 advisement does not categorically bar a motion to withdraw the plea under § 1018 on grounds of mistake or ignorance].)

### C. Alma's Showing Regarding Her Misunderstanding

Next, we consider whether Alma had carried her burden of proof and demonstrated she did not meaningfully understand the adverse immigration consequences of her plea. (§ 1473.7, subd. (a)(1).) The Attorney General has conceded that Alma "has established that she did not meaningfully understand the immigration consequences of her plea." While this concession is "significant" (see *Espinoza*, *supra*, 14 Cal.5th at p. 325), we nonetheless undertake an independent review of the record to confirm the concession is warranted.

Direct evidence on this issue involving Alma's state of mind is provided by her declaration, which asserts: "At that time, I did not fully and meaningfully understand what the immigration consequences were and how they would affect me in the future. No one told me." Alma's assertion regarding immigration consequences is consistent with the record, which contains nothing showing Alma was advised she was pleading to an aggravated felony or a crime of moral turpitude and that conviction of such a felony or crime would bar her from ever becoming a naturalized citizen. As described earlier, the transcript of the plea hearing shows Alma was informed only of consequences that her conviction "may have" and was not informed of the consequences that were mandatory in her case. Also, the record contains no plea form signed or initialed by Alma.

Alma's assertion also fits with the state of the law when the December 2008 plea was entered—that is, before the United States Supreme Court decided *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*) and before the Legislature enacted sections 1016.2 and 1016.3. (See Stats. 2015, ch. 705, §§ 1, 2.) In 2008, there was no Sixth Amendment obligation on the part of defense counsel to affirmatively advise a defendant of the immigration consequences of a conviction. (See *Chaidez v. United States* (2013) 568 U.S. 342, 353.) Rather, most courts had determined that no such duty existed.

(*Ibid*.)  In *Padilla*, the United States Supreme Court changed the law and "held that the Sixth Amendment requires defense counsel to provide affirmative and competent advice to noncitizen defendants regarding the potential immigration consequences of their criminal cases."  (§ 1016.2, subd. (a).)  These and other historical developments in the law were described in *People v. Rodriguez* (2021) 68 Cal.App.5th 301 (*Rodriguez*), where the defendant challenged a 2005 conviction.  (*Id*. at pp. 307–312.)  The defendant submitted a declaration from "the supervising attorney of the public defender's office where [Rodriguez's] counsel was employed [which] stated that prior to the *Padilla* decision in 2010, it was 'not the common practice of defense counsel to research or advise clients regarding the specific immigration consequences of a particular plea.' " (*Id.* at p. 323.)

Based on our independent review of the record, we agree with the Attorney General's concession and conclude Alma established it is more likely than not that she did not understand the mandatory immigration consequences of her plea.

IV.    PREJUDICE

Alma also has the burden of proving her lack of understanding of the immigration consequences of her plea was prejudicial—that is, it is reasonably probable that she would have rejected the plea if she had correctly understood the immigration consequences.  (*Vivar, supra,* 11 Cal.5th at p. 529; see generally, *People v. Watson* (1956) 46 Cal.2d 818, 836 [a "miscarriage of justice" has occurred when "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)  The reasonable probability standard does not mean more likely than not.  (*Rodriguez*, *supra*, 68 Cal.App.5th at p. 324.)  Instead, it means merely a reasonable chance, which is more than an abstract possibility.  (*Ibid*.)  Stated another way, a reasonable probability is a probability sufficient to undermine confidence in the outcome.  (*Ibid*.; *Strickland v. Washington* (1984) 466 U.S. 668, 694 [same].) Confidence in an outcome is affected by the impact of being wrong on the various

17.

interests at stake, which include (1) the public's interest in the finality of the judgment, specific and general deterrence, restitution, and rehabilitation; (2) the defendant's interest in avoiding immigration consequences, which "may be by far the most serious penalty flowing from the conviction";[10] (3) the interests of the defendant's family members, including United States citizen children; and (4) the interests of the community where the defendant lives and works.[11]

In assessing whether a reasonable probability has been shown, courts must consider the totality of the circumstances. (*Espinoza*, *supra*, 14 Cal.5th at p. 320; *Vivar*,

---

[10]    Section 1016.2, subdivision (c).

[11]    The findings and declarations in section 1016.2 are relevant to a section 1473.7 motion because the Legislature declared in 2018 that section 1473.7 "shall be interpreted in the interests of justice and consistent with the findings and declarations made in Section 1016.2 of the Penal Code." (Stats 2018, ch. 825, § 1, subd. (c); see *Vivar*, *supra*, 11 Cal.5th at p. 529.) Section 1016.2 states in part:

> "(f) Once in removal proceedings, a noncitizen may be transferred to any of over 200 immigration detention facilities across the country. Many criminal offenses trigger mandatory detention, so that the person may not request bond. In immigration proceedings, there is no court-appointed right to counsel and as a result, the majority of detained immigrants go unrepresented. Immigration judges often lack the power to consider whether the person should remain in the United States in light of equitable factors such as serious hardship to United States citizen family members, length of time living in the United States, or rehabilitation.

> "(g) The immigration consequences of criminal convictions have a particularly strong impact in California. One out of every four persons living in the state is foreign-born. One out of every two children lives in a household headed by at least one foreign-born person. The majority of these children are United States citizens. It is estimated that 50,000 parents of California United States citizen children were deported in a little over two years. Once a person is deported, especially after a criminal conviction, it is extremely unlikely that he or she ever is permitted to return.

> "(h) It is the intent of the Legislature to codify Padilla v. Kentucky and related California case law and to encourage the growth of such case law in furtherance of justice and the findings and declarations of this section."

*supra,* 11 Cal.5th at p. 529.)  In considering all the circumstances, certain factors are particularly relevant, including (1) the defendant's ties to the United States, (2) the importance the defendant placed on avoiding the adverse consequences, (3) the defendant's priorities in seeking a plea bargain, and (4) whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.  (*Espinoza*, *supra*, at p. 320.)  "These factors are not exhaustive, and no single type of evidence is a prerequisite to relief."  (*Id.* at p. 321.)

The Attorney General contends Alma failed to establish her misunderstanding was prejudicial.  The Attorney General asserts that evidence regarding most of the particularly relevant factors is absent from the record and the showing of her ties to the community is minimal.  In particular, the Attorney General states Alma offered no objective evidence of (1) her immigration status, (2) the lack of connections to her country of origin, (3) her connections to family, friends or the community, (4) her work history, (5) taxes paid, or (6) schools attended.  Thus, the Attorney General contends the personal-ties factor weighs in favor of finding Alma did not establish prejudice.

Alma's declaration addressed prejudice by stating that if she had known her plea would result in exclusion of admission to the United States, denial of naturalization, or not being able to receive a green card, she would have fought the case, would have consulted with an immigration attorney, and would have asked for another resolution with no immigration consequences.  This statement, if true, would establish her misunderstanding was prejudicial.  However, courts do not accept at face value a defendant's assertion that he or she would have behaved differently if fully aware of the adverse immigration consequences of the plea.  Our Supreme Court's decisions require that such assertions be corroborated with objective evidence.  (*Espinoza*, *supra*, 14 Cal.5th at p. 321; *Vivar*, *supra*, 11 Cal.5th at p. 530.)

Here, the corroborating evidence offered by Alma was her ties to the United States.  Her declaration asserted:

"I have been living in the US since 1994, paying taxes here and working here and now I am facing the possibility of not receiving a green card and living in exile for the rest of my life. I have 3 children [who] are United States Citizens."

Other corroborating evidence of her ties includes her children's birth certificates, the probation report, and her 2017 driver's license. These documents consistently show Alma as living in or near Porterville from 1999 through 2017.

"Ties to the United States are an important factor in evaluating prejudicial error under section 1473.7 because they shed light on a defendant's immigration priorities." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.) "Community ties may be established by length of residence; immigration status; lack of connection to the country of origin; connections to family, friends, or the community; work history or financial ties; *or* other forms of attachment." (*Ibid*., italics added.) The Supreme Court's use of the disjunctive connector "or" in this list is consistent with its statement that "no single type of evidence is a prerequisite to relief." (*Ibid*.; see *Houge v. Ford* (1955) 44 Cal.2d 706, 712 [ordinary meaning of the word "or" is "to mark an alternative such as 'either this or that' "].)

At the time of her plea in December 2008, (1) Alma was 35 years old; (2) she had lived in the United States since she was 21 years old; (3) she had an unspecified history of working and paying taxes, and (4) her daughters, who are citizens of the United States, were nine and six years old. Thus, at that time, returning to Mexico would have separated Alma from her employment and also would have separated her from her daughters or, alternatively, would have uprooted her children and deprived them of the advantages of their home country. The importance of Alma's ties to her daughters is reflected in her actual behavior "[a]fter [she] accepted the plea and served jail time." (*Espinoza*, *supra*, 14 Cal.5th at p. 322.) In *Espinoza*, after the defendant was released from jail, "he returned home to care for his family and community. He became the caregiver for his elderly parents who suffer from severe medical conditions. He ran his own business to provide for his family. He volunteered, went to church, and took part in

20.

numerous community organizations." (*Ibid.*) Our Supreme Court concluded that "[t]hese facts lend credence to Espinoza's assertion that his community ties were important to him *at the time of his plea*." (*Ibid.*, italics added.)

Here, Alma complied with the terms of her probation that required her to pay fines imposed by the court and complete programs, thereby avoiding the separation from her family and employment that would have resulted from a probation violation.[12] Furthermore, the record shows that Alma remained in California with her family and in 2012 gave birth to a son. The general statement in Alma's declaration that she has lived in the United States since 1994 implies that she has not returned to Mexico since coming to the United States. We infer Alma has not returned to Mexico because it is consistent with the information contained in her son's birth certificate, the probation report, and her driver's license.

We recognize that the evidence establishing the strength of the defendant's personal ties to the United States was less robust than that presented in *Espinoza* and *Vivar*.[13] Conversely, we also recognize that those cases and other appellate decisions do

---

[12] The prosecution presented no evidence that Alma violated the terms of her probation or committed additional crimes after her plea. Also, the factual assertion that Alma still owed $283.00 in restitution was not supported by evidence and the Attorney General's respondent's brief does not rely on that assertion.

[13] The personal details addressed in a comprehensive declaration include, without limitation, (1) the movant's age upon arrival in the United States; (2) the identity of the persons with whom the movant came to the United States; (3) the persons with whom the movant lived upon arrival; (4) the movant's immigration status and language abilities; (5) where the movant's grandparents, parents, siblings, and other relatives live and their immigration status; (6) the movant's marital status and, details about any spouse; (7) the ages and citizenship of the movant's children and grandchildren; (8) the schools, if any, the movant attended in the United States; (9) the movant's employment history; (10) the movant's history of paying state and federal income taxes and property taxes; (11) persons for whom the movant acts as the primary care giver; (12) real property owned by the movant or the movant's parents; (13) connections or lack of connections to country of origin; (14) community involvement; (15) the movant's or family member's military service; and (16) the movant's pre-plea and post-plea criminal record.

21.

not establish the principle that the ties between a mother and her children are insufficient as a matter of law to corroborate a defendant's assertion of prejudice. The importance of the connection between children who are United States citizens and a foreign-born parent is recognized in the legislative findings in section 1016.2, subdivision (g). (See fn. 11, *ante*.) Of course, the strength of a mother-child connection will vary from individual to individual. Here, however, the 2021 petition of Alma's oldest daughter to the United States Citizenship and Immigration Service on Alma behalf supports the inference that their connection was, and continues to be, strong.

Based on our independent review of the totality of the circumstances and our understanding of the reasonable probability standard, we find there is a reasonable chance, which is more than an abstract possibility, that Alma would have rejected the plea if she had correctly understood the immigration consequences and would have sought an alternate resolution. Accordingly, we conclude Alma has affirmatively established a "prejudicial error" within the meaning of section 1473.7, subdivision (a)(1). (Cf. *People v. Mejia*, *supra*, 36 Cal.App.5th at p. 873.)

The appropriate relief on appeal is to reverse and "remand the case to the trial court for entry of an order granting [Alma's] section 1473.7 motion to vacate h[er] conviction." (*Espinoza*, *supra*, 14 Cal.5th at p. 326; see *People v. Alatorre*, *supra*, 70 Cal.App.5th at p. 771 [reversed order denying the § 1473.7 motion and remanded with directions to grant the motion].)[14] "[S]ection 1473.7 does not require a court to dismiss the matter after the movant successfully vacates a conviction and withdraws his or her plea." (*People v. Vaca* (2023) 89 Cal.App.5th 1113, 1120.) This opinion does not imply,

---

**14**     If the parties desire an expeditious remand, they may stipulate to the immediate issuance of remittitur (either before or after the period to request a rehearing has expired) pursuant to California Rules of Court, rule 8.272(c)(1), which is made applicable to appeals in criminal cases by California Rules of Court, rule 8.366(a). (See *People v. Porter* (2022) 73 Cal.App.5th 644, 652.)

one way or the other, whether dismissal of the case is appropriate under section 1385, subdivision (a).

## DISPOSITION

The order denying the section 1473.7 motion is reversed.  The matter is remanded and the superior court is directed to file—no later than 10 days after the issuance of remittitur—an order granting the motion, vacating the conviction, and allowing Alma to withdraw her plea.

FRANSON, Acting P. J.

WE CONCUR:


PEÑA, J.


MEEHAN, J.

23.